CITY OF DAYTON *v.* ALLEN.

(No. 337720—Decided May 18, 1971.)

Municipal Court of Dayton.

*Mr. Henry W. Phillips,* city prosecutor, for the city.
*Mr. Ted W. Rice,* for the defendant.

RICE, J. *FACTS.* Late in the evening of March 6, 1970, two city of Dayton police officers, one of whom was Patrolman Kirkland, observed the defendant, Betty Allen, a known prostitute whom Kirkland had previously arrested for prostitution, and several other females, also known prostitutes, standing in front of the premises located at

1419 West Third Street, a known house of prostitution. The ladies were waving at automobiles and attempting to stop them. The defendant was arrested and charged with congregating in a place of prostitution.

This was not the first time that officer Kirkland had seen this defendant at this location in the company of known prostitutes. On March 3, 1970, some three days prior to the arrest, officer Kirkland and his partner had observed the defendant and other known prostitutes walk to the curb in front of 1419 West Third Street and attempt to flag down passing automobiles. At that time, all the girls, the defendant included, were not only advised by the police of the new city "congregating" ordinance, which purports to prohibit one from knowingly congregating in a place where prostitution is carried on, but also were advised that several arrests had been previously made at that location under the "congregating ordinance" (the location being a known house of prostitution), and that if they did not leave the area or if they were once again observed "congregating" at these premises, an arrest would follow.

Again, on March 4, March 5, and early in the afternoon of March 6, 1970, the defendant was seen in front of the same location, 1419 West Third Street, in the company of known prostitutes engaging in the same course of conduct. When the officers observed her for the second time on March 6, an arrest under the "congregating ordinance" was made.

At trial, the defendant made little attempt to defend the case on factual grounds, but rather interposed a legal defense based on the alleged unconstitutionality of the congregating ordinance in that: 1. "Same was unconstitutionally vague to the point where it lacks ascertainable standards of guilt and is so imprecise and indefinite that men of common intelligence must necessarily guess at its meaning and differ as to its application. 2. The ordinance violates one's constitutional rights to peaceful assembly and thus is an unconstitutional exercise of the police power by the city of Dayton."

A motion to dismiss the affidavit on the above consti-

tutional grounds was made prior to the taking of testimony and was taken under advisement by the court.

The "congregating ordinance," Section 926 of the Code of General Ordinances of the city of Dayton reads, in pertinent part, as follows:

"It shall be unlawful for any person or persons to knowingly congregate in or about any house of ill fame or any place, building, structure or conveyance where prostitution, lewdness, or assignation is permitted, conducted, or carried on; in or about any place, building, or structure where betting, bookmaking, the playing of any game of chance for money or anything of value, the playing or operation of any machine, apparatus, or device for purposes of gambling or any lottery, game of policy, game of chance or gambling in any form whatsoever is permitted, conducted or carried on; or in or about any poolroom, soft drink establishment, saloon, or any premises where intoxicating liquors, barbiturates, narcotic drugs, opiates, or hallucinogenic drugs are unlawfully manufactured, possessed, sold, dispensed, or given away; provided that such person or persons who congregate in or about the above-named areas or establishments have knowledge that such activities do take place therein."

*THE ISSUE.* Is Section 926 of the Code of General Ordinances of the City of Dayton—the "Congregating Ordinance"—Constitutional?

*THE DECISION* A. *The Holding.* The city of Dayton's "Congregating Ordinance" which prohibits one from knowingly congregating in or about any one of certain named areas or establishments where certain stated illegal activities are being carried on with knowledge that such activities take place therein is *unconstitutional* in the following respects:

1. Violative of the Due Process Clause of the 14th Amendment to the United States Constitution in that the ordinance imposes sanctions upon conduct that might or might not manifest an unlawful purpose, that it makes no distinction between conduct calculated to harm and conduct which is essentially innocent, thus raising the very real

risk that the ordinance will be selectively or discriminatingly enforced with the standard of conduct specified in the ordinance dependent upon each individual police officer's sensitivity or discretion. The ordinance is thus violative of due process of law in that its language is vague to the point that it lacks ascertainable standards of guilt, fails to give one fair notice of what acts are prohibited and will be punished, and is so imprecise and indefinite that men of common intelligence must necessarily guess at its meaning and differ as to its application.

2. Violative of the First Amendment to the United States Constitution made applicable to the states through the Due Process Clause of the 14th Amendment, and Article I, Section 3 of the Ohio Constitution, in that it violates one's right of free or peaceful assembly, and is thus an unconstitutional exercise of the police power by the city of Dayton.

B. *THE LAW*. 1. *Background*. Before going into a detailed explanation of the "congregating ordinance," it would be wise, at the beginning, to emphasize that the ordinance is a departure from the usual vagrancy, loitering, suspicious person, breach of the peace, or disorderly conduct statute or ordinance which courts (both federal and state) have been striking down for years as unconstitutional. The "congregating ordinance" is an attempt to, while achieving the purposes of those other ordinances, stay within the bounds of what has been declared unconstitutional.

The aforementioned types or categories of laws have been held to be unconstitutional for the reason that they are vague and open ended laws which delegate to the police too much power over the citizen's liberty.

These laws, those which have been declared to be unconstitutional, share one common characteristic or possess one "golden thread" running throughout—by making criminality turn on the policeman's suspicion or his satisfaction with the citizen's account of himself (note that the burden is put on the citizen to explain his presence or actions) or his view of what is orderly or disorderly, the statutes or

ordinances in question delegate to the policeman too much power over the citizen's liberty. The citizen is subjected to the discretion, be it arbitrarily exercised or not, of the policeman as to whether his actions are to be, in the given case, classified as criminal. The courts have held, in invalidating these ordinances, that they do not describe, with reasonable enough certainty, the act which is forbidden. *State* v. *Coterel*, 97 Ohio App. 48; *State* v. *Bovee*, 60 Ohio N. P. (N. S.) 337. The crime and the elements constituting it must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. *Columbus* v. *Thompson* (1971), 25 Ohio St. 2d 26.

The immediate predecessor to the "congregating ordinance" in Dayton was an "old style" loitering ordinance which read, in pertinent part, as follows:

"It shall be unlawful for any person to loiter or wander in or about any public building or in the streets, alleys or other public ways or places, or in or about any vacant lot or commons—or in or about any house of ill fame, or any place, building or structure, or conveyance where prostitution, lewdness or assignation is permitted, conducted * * * without any uawful means of support or without being able to give a reasonable account of himself or herself."

This loitering ordinance was declared unconstitutional in 1967 by Judges Krehbiel and Keane on the grounds that the requirement that a person questioned by the police "must be able to give a reasonable account of himself or herself" puts the burden of proof of conduct upon the defendant and not upon the prosecution where it rightfully belongs. *Dayton* v. *Linda Jean Jackson*, Case No. 291491 and *Dayton* v. *Barbara Moon*, Case No. 294963 (both unreported).

The "congregating ordinance" in question herein is a direct outgrowth of the city of Dayton's loitering statutes being declared unconstitutional. Although an attempt has been made through skillful draftsmanship to avoid the constitutional pitfalls that befell the laws referred to

above, it is clear that the constitutionality of the "congregating ordinance," being the successor to these laws, must be determined with reference to the case law that interpreted these loitering, vagrancy, suspicious person and other similar statutes. Reference to that case law, both in Ohio and in the federal system, clearly indicates that the "congregating ordinance," like its predecessor, although beyond reproach in so far as its purpose is concerned, is constitutionally deficient and must be declared invalid.

It is clear that the purpose or the motive behind the enactment of the "congregating ordinance" is a valid one. *Columbus* v. *DeLong*, 173 Ohio St. 81. The police authority feels that crime can be reduced by prohibiting the clustering of groups of people around and about places where criminal activity is known to occur, to wit: houses of prostitution, gambling, and places where narcotics traffic is known to flourish. No matter how noble or understandable a purpose the prevention of crime may be (it is always better to prevent crime from occurring rather than to punish it after it has occurred), and no matter how valuable an enforcement weapon the "congregating ordinance" may be for law enforcement agencies, the language of the statute must, under the law, comport with fundamental due process in order to be valid. *Columbus* v. *Thompson* (1971), 25 Ohio St. 2d at 31.

2. *The ordinance is constitutionally void for vagueness and indefiniteness.* It is difficult to discuss this first constitutional deficiency in the "congregating ordinance" without overlapping into a discussion of what is, in the court's opinion, the equally serious constitutional defect that the ordinance in question violates one's constitutional right to free or peaceful assembly guaranteed him by both the Ohio and the federal constitutions. However difficult the task, a few words must be spoken with reference to this defect in the language of the ordinance.

Basic to any criminal statute is the requirement that it be sufficiently clear in defining the prohibited activity and that it contain ascertainable standards of guilt. *Winters* v. *New York* (1948), 333 U. S. 507. The purpose

of such a requirement is, as stated in *Connally* v. *General Construction Co.* (1926), 269 U. S. 385 at 391—"To inform those who are subject to it what conduct on their part will render them liable to its penalties * * * and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application, violates the first essential of due process of law. * * *" *Columbus* v. *Thompson* (1971), 25 Ohio St. 2d 26, 30.

In the *Connally* case, the United States Supreme Court cited, with approval, the decision in *United States* v. *Capitol Traction Co.*, 34 App. D. C. 592, in the course of which opinion the court said:

"* * * The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will admit of different construction. A criminal statute cannot rest upon an uncertain foundation. The crime and the elements constituting it must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another." *City of Columbus* v. *Thompson, supra.*

We must apply these rules to the ordinance under consideration in the case at bar which prohibits one from knowingly congregating in or about certain establishments or areas where certain stated criminal activity is taking place, knowing what criminal activity is carried on in that establishment or area. In the case of *Columbus* v. *DeLong* (1962), 173 Ohio St. 81, the Ohio Supreme Court held that an ordinance which made it an offense for a prostitute merely to wander about the streets is void for indefiniteness. The court felt that merely by wandering, *without more*, a prostitute committed no criminal offense. In the case of *Columbus* v. *Thompson, supra*, the court held that

the Columbus suspicious person ordinance which prohibited the wandering about the streets or other public ways at late or unusual hours in the night without visable or lawful business, without being able to give a satisfactory account of himself was likewise too indefinite or vague to satisfy due process requirements. The court felt that the mere wandering, without any more or any additional course of offensive conduct, did not constitute a criminal offense and that the wanderer did not commit a criminal offense.

By analogy, in the case at bar, the court feels that the mere act of congregating, without more, does not constitute a criminal offense, and an ordinance which prohibits, in essence, the mere congregating, without adding a further prohibited activity which cannot be engaged in by those so congregating, is too vague and indefinite to meet due process requirements. The ordinance does not require for conviction that the congregator commit any overt act, other than the mere congregating, either to further the activies of the group or of the place or establishment where the prohibited activities took place. To meet constitutionally acceptable standards, the ordinance in question must prohibit not only congregating but also an additional course of conduct—criminal conduct—on the part of those congregating. Reference to 25 A. L. R. 3d 827, loitering ordinances and statutes and 71 A. L. R. 2d 875, unlawful assembly statutes, substantiates this basic premise that in order for these laws to be sustained the term ''loiter,'' ''unlawful assembly,'' or ''congregating'' must be used in connection with or to describe another prohibited act. This was not done in the case at bar, and, therefore, the ordinance is constitutionally deficient. See, also, *St. Louis* v. *Gloner* (1908), 210 Mo. 502, 109 S. W. 30, and *Soles* v. *Vidalia* (1955), 92 Ga. App. 839, 90 S. E. 2d 249, which stand for the general proposition that a loitering (or similar type of ordinance) is valid only if it prohibits the kind of loitering (or congregating) that offends the rights of others.

To the same effect see *Cincinnati* v. *Coates* (1970), 21 Ohio St. 2d 66, which sustained an ''unlawful assembly

statute" making it unlawful for *three or more* persons to assemble * * * *and* to conduct themselves in a manner annoying to persons passing by. Thus, the statute not only defines the number necessary to come within the ordinance but also prohibits unlawful assembly which is used in connection with another prohibited act, to wit: the annoyance of passers by. Not only is unlawful assembly prohibited, but also the additional course of criminal conduct on the part of those unlawfully assembling.

It is contended, however, that the "congregating ordinance" requires more for prosecution and conviction than mere "congregating" and that when the whole ordinance is read together it meets the required standards of due process. This contention refers to the whole of the ordinance which states that in order to be prosecuted for "congregating," the congregating must be knowingly done in or about a place or establishment where it is known (by the congregator) that prostitution, narcotics traffic, or gambling takes place. In the court's opinion, this qualifying language does not save the ordinance from being constitutionally deficient for indefiniteness and for being violative of the due process requirements. Congregating in and of itself is not an offense. To knowingly congregate is, in the court's opinion, no more of a criminal offense than the mere congregating alone. Furthermore, the knowingly congregating or purposefully congregating in or about an area or establishment where certain illegal activities take place is not a criminal offense.

The ordinance is further defective because of the very real problem of defining, in a manner understandable by all, the term "congregating." In the court's opinion, the ordinance in question grants to the police force of the city the absolute discretion of preventing any gathering or congregating of persons and to prevent them from occupying the sidewalks and to arrest any one found in violation, should they be congregating, meeting, or conversing in or near an area or establishment where certain illegal activities take place. It could, in the language of *Cleveland* v. *Baker*, 83 Ohio Law Abs. 502, "permit the arrest of two

or more friends or relatives found conversing on the sidewalk or after church or before entering or after leaving a place of amusement. It could permit the arrest of two or more lawyers or doctors found on the sidewalk discussing their cases. It could prevent a group of friends in the city for a convention from meeting in groups while touring the city either for business or pleasure.'' Many other situations could be enumerated which would convert conduct which is prima-facie lawful (congregating) into that which is criminal under this ordinance.

A further question arises as to the definition of ''congregating.'' Does it refer to two or more people together or one person standing alone near a group of people? In order to be guilty of congregating, the question will arise as to how close to the prohibited place or establishment the congregator must be standing—3 feet, 100 yards, or some distance in between? Furthermore, what type of conduct must be engaged in by the congregator—must he be engaged in active conversation with others either congregating in or about the establishment or area, or must he simply be standing there with a look of interest in what is going on? The ordinance in question does not provide for government by clearly defined laws, but rather government by the moment to moment opinions of a policeman on his beat. *Cox* v. *Louisiana*, 378 U. S. 536.

The case of *Cleveland* v. *Baker, supra,* invalidated a ''congregating ordinance'' which provided, in pertinent part, as follows:

''It shall be unlawful for persons having no occupation or business at the places hereinafter named, to congregate upon or occupy the sidewalk, or at the corners of any street of the city, or in such manner as to occupy the sidewalks in any dwelling or place of business in the city * * * and it is hereby made the duty of the police force of the city to prevent such gathering or occupants on sidewalks and street corners and to arrest persons found in violation of this section.''

The *Baker* court stated that the ordinance referred to above, which was declared to be unconstitutionally vague,

could permit the police to arrest either the leader of the group, the whole group or any portion of the group as suited their pleasure, or as they in their sole discretion determine necessary, advisable or convenient; that an ordinance which forbids an act in terms so vague that men of common intelligence and understanding must guess as to its meaning and differ as to its application violates the first essential of due process of law. *Cleveland* v. *Baker* (1960), 83 Ohio Law Abs. 502. An ordinance which delegates authority as to its enforcement without laying down any rules or standards, properly within the police power, for such decision grants an arbitrary power to interfere with constitutional rights and is void. *Cancer Society* v. *Dayton*, 160 Ohio St. 114. See further the above mentioned two A. L. R. citations.

The analogy between the instant case and the case of *Cleveland* v. *Baker, supra*, is obvious. The ordinance under discussion which refers to all persons and not to a specific class would make unlawful a course of conduct (congregating) which is prima-facie lawful. Since there are no objective guidelines laid down for police performance, the danger of selective enforcement would be a real one. Police could arrest, as stated in the *Baker* court, the entire group, the leader of the group or any one they so chose. The fact that the ordinance requires, before a prosecution can be commenced, that the congregator must have knowledge that the area or establishment in or about which he is congregating is one in which prohibited criminal activity takes place is no protection against the danger of selective enforcement. This is for the reason that the mere act of congregating alone, without coupling congregating to a further prohibited or criminal act, is not a criminal offense. The ordinance read literally would outlaw "congregating" in or about a place or establishment where, among other things, certain gambling activity takes place. Does this mean that our police department can be expected to arrest all persons within the vicinity of the first tee at a municipal golf course or all persons within the locker room at a country club—both establishments being places where golf-

ers customarily engage in friendly betting over their golf games? Can we now expect the police to arrest, for congregating, all persons attending a church festival, lodge picnic or school festival where games of chance are customarily played for tokens, prizes or the like? Of course not! The fact that the police claim that only "bad folk" will be arrested and that the "good folk" will be left alone is not sufficient to save this law from being constitutionally deficient. Good faith compliance or enforcement cannot make constitutional an ordinance which is, on its face, unconstitutional. Well intentioned police and prosecutors do not neutralize the vice of a vague penal law. See 25 A. L. R. 3d 826, loitering statutes and ordinances and *Seattle* v. *Drew*, 70 Wash. 2d 405, 423 P. 2d 522.

The ordinance as it stands does not contain ascertainable standards of guilt and therefore leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case. *Giaccio* v. *Pennsylvania* (1966), 382 U. S. 399. The ordinance, as it stands, imposes sanctions upon conduct that may not manifest an unlawful purpose and thus is violative of due process of law, the language being vague and the ordinance making no distinction between conduct calculated to harm and that which is essentially innocent. The term congregating does not reasonably connote only unlawful activity, but is subject to construction as including lawful conduct. The ordinance as it stands leaves the citizen at the mercy of the officer's whim or caprice, *Stoutenburgh* v. *Frazer*, 16 App. D. C. 229, and brings us close to the situation envisioned by the Supreme Court of the United States in the case of *Shuttlesworth* v. *Birmingham* (1967), 392 U. S. 87, where a city loitering ordinance was so vague that the court felt that, carried to its logical conclusion, it would allow people to stand on the streets, in certain areas of the city of Birmingham, only at the whim or at the pleasure of the police officers.

3. *The "Congregating Ordinance" violates one's right to free or peaceful assembly and, as such, is an unreason-*

*able exercise of the City's police power and thus unconstitutional.*

The First Amendment to the United States Constitution, made applicable to the states through the operation of the Due Process Clause of the 14th Amendment, and Section 3, Article 1 of the Ohio Constitution guarantees to the citizens of this nation and state the right to free and peaceful assembly. By the reserved powers of sovereignty, the people of Ohio have affirmed the constitutional right of all its citizens to assemble or congregate. *Toledo* v. *Sims* (1960), 84 Ohio Law Abs. 476.

Freedom of assembly, however, can be limited by a local legislative authority through the legitimate use of its police powers. Section 3, Article XVIII of the Ohio Constitution; 16 American Jurisprudence 2d 681, Constitutional Law, Section 355. Examples of laws which have been passed to limit the freedom of assembly are vagrancy, loitering, suspicious person, breach of the peace and disorderly conduct laws. The city of Dayton's "Congregating Ordinance," under discussion in the case at bar, is such an attempt to limit the freedom of assembly through the use of the police power reserved in the city of Dayton. Obviously, proper laws may be passed by the legislative authority in the reasonable exercise of its police power to protect public health, morals, safety and general welfare but not to an extent to deny arbitrarily, capriciously, and discriminatingly the constitutional right of inhabitants to assemble. *Toledo* v. *Sims, supra*; *Zanesville* v. *Wilson*, 130 Ohio St. 286; *Cincinnati* v. *Correll*, 141 Ohio St. 535; and *Cancer Society* v. *Dayton, supra*.

The issue involved in the case at bar is whether the "Congregating Ordinance" is a legitimate exercise of the police power limiting the freedom of assembly or, rather, whether it constitutes an unreasonable and arbitrary infringement on such right of free assembly and is thus an unconstitutional exercise of the police power by the city of Dayton.

By definition, the word "congregate" means "to come together, to assemble or to meet." *Board of Health of*

*Patterson* v. *Clayton*, 93 N. J. L. 64, 106 A. 813. Therefore, the very definition of the word "congregate" would indicate that laws prohibiting "unlawful assembly" provide the closest parallel to the ordinance under consideration in the case at bar. Indeed, the very caption of the ordinance states that it prohibits "unlawful assembly in certain places."

The elements of the offense of unlawful assembly, required by all the statutes in Ohio and elsewhere, are as follows: (1) a gathering of persons, usually three or more —an assembly; (2) a purpose, unlawful or, more infrequently, lawful; and (3) a common intent to either carry out the unlawful purpose or to carry out the lawful purpose in an unlawful manner. 71 A. L. R. 2d 875 unlawful assembly statutes or ordinances.

Although there is some authority to the effect that the third element, "a common intent," can be inferred from the mere presence of an individual at the site of an unlawful assembly (18 Univ. of Oregon Law Review 254, at page 256 (1939)), the facts of the cases used to support this proposition show that an accumulation of circumstances, including presence at the site of the disturbance, led the courts to decide that the individual or individuals arrested formed a common intent to participate in the unlawful assembly. Mere presence alone, without any other attendant circumstances, would not seem to be enough for prosecution and conviction under an unlawful assembly statute. See discussion and cases cited in *Cleveland* v. *Anderson* (1968), 13 Ohio App. 2d 83. In the case of *Cole* v. *Arkansas* (1949), 338 U. S. 345, the United States Supreme Court indicated that it would strike down, as unconstitutional, any attempt to stretch an unlawful assembly-type statute so as to incriminate an innocent member of a group merely because he was present at an assembly where violence or an unlawful act took place. See also *Elfbrandt* v. *Russell* (1966), 384 U. S. 11, cited in *Cleveland* v. *Anderson, supra,* in which the Supreme Court expanded upon this view when it denounced the "guilt by association" aspects inherent in various state loyalty oaths.

The city of Dayton "Congregating Ordinance" clearly indicates that an accused's mere presence near certain areas or establishments where he knows that certain illegal activities take place is sufficient to put one in violation of the ordinance and subject him to its criminal penalties. This is clearly the type of statute or ordinance that the Supreme Court indicated it would not allow to be stretched so as to incriminate an innocent member of a group simply because of his mere presence at the scene. A person who does nothing more than stand, either as a part of a group or as an individual near a group, can run afoul of the law. Under the ordinance, mere presence, presence with knowledge that illegal activities are taking place nearby, is sufficient for conviction. The ordinance does not require for conviction that the potential defendant either commit any overt act or join in a common intent to further the prohibited activities of the group or of the area or establishment where the prohibited activity takes place.

The "Congregating Ordinance" is clearly violative of the right of free assembly in that it lays down no guidelines or standards to guide either the police or the citizen in regard to determining either: 1) how many persons must be grouped, either together or individually, in order to constitute a "Congregating," and/or 2) how it is to be determined whether or not a common intent (common among the congregators) exists to carry out either an unlawful purpose (how can the mere act of congregating, without more, be unlawful) or to carry out a lawful purpose in an unlawful manner. By prohibiting all knowing or purposeful congregating in or about certain prohibited areas or establishments, the ordinance places a blanket prohibition against congregating or free assembly which applies to all persons, innocent or guilty, regardless of person, place or purpose; to those with or without a common intent to carry out any purpose, lawful or unlawful; and to those who may be part of a group or simply standing alone minding no one's business but their own. As such, it punishes conduct which is, on its face, lawful, and raises the haunting spectre of a dragnet-type enforcement designed to clear the streets

of all persons found near places where certain illegal acti-
vity takes place, even if those persons are totally innocent
individuals or members of a group who just happen to be
on the scene (such as golfers or people in attendance at
church or school festivals).

However, it is further contended that the rejuirement
that the congregator have knowledge that he is congre-
gating about a place where certain illegal activities are be-
ing carried on before he can be prosecuted for "congregat-
ing" nullifies this risk of a dragnet or indiscriminate-type
enforcement. It is urged that the "knowledgment require-
ment" would prevent the incriminating of an unwitting
congregator. The court does not agree with this conten-
tion. What this ordinance says, in essence, is that if a
person is aware or becomes aware that he is congregating
around a place where illegal activities take place, and if
he does not remove himself, then he can be guilty of "con-
gregating" under the law. We then have the same situa-
tion that the Supreme Court found itself faced with in the
*Shuttlesworth* case, *supra*, where a person, whether his be-
ing on the street contributed in any way to the furtherance
of any illegal activity, could stand on the city streets only
at the sufferance and tolerance of the city police. In Day-
ton, whether or not the "congregator" contributes to the
illegal activity being carried out in the prohibited area or
establishment, he or she can congregate or be on the streets
in that area only at the whim of the Dayton Police Depart-
ment.

"The United States Supreme Court has been careful
not to unduly restrict the application of local police powers.
As the court stated in *Goldblatt* v. *Hempstead* (1962), 369
U. S. 590:

" 'The term police power connotes the time tested con-
ceptual limit of public encroachment upon private interests.
Except for the substitution of the familiar standard of rea-
sonableness, the court has generally refrained from issuing
any specific criteria. * * *' "

"In the area of First Amendment rights, however, the
Supreme Court has been more specific

" 'The power of a state to abridge freedom of speech and of assembly is the exception rather than the rule * * * the limitation upon individual liberty must have appropriate relation to the safety of the state. Legislation which goes beyond this need, violates the Constitution.' *Herndon* v. *Lowry* (1937), 301 U. S. 242.

" 'While the city has the undoubted right, under its charter, to regulate the use of its streets, it has no right to do so in a way that interferes with personal liberty of the citizen as guaranteed to him by our Constitution and laws. Under this ordinance it is just as much an offense to stand or loaf around upon the corner of one of the streets in the city for five minutes as for two hours or more, time not being an ingredient of the offense, and this, too, regard less of the fact that the offender may not during that time impede the passage of other pedestrians or otherwise interfere with the rights of others. The defendant had the unquestioned right to go where he pleased and to stop and remain upon the corner of any street that he might desire, so long as he conducted himself in a decent and orderly manner, disturbing no one, nor interfering with any one's right to the use of the street.' *St. Louis* v. *Gloner, supra.*

" 'The right of the trustee municipality to deny to the owner residents thereof the use of their streets must accordingly, where it exists, be justified on the ground that a greater right, infringement of which is threatened, is thereby being assailed. Examples of the justifiable use of such power are where disorderly or obnoxious conduct is apparent, where traffic is impeded by an obstruction, a congregation of persons, the selling of goods, and so on.' *Soles* v. *Vidalia, supra.*

"Ohio follows the general rule of limitation found in most states which holds that an exercise of police power will be held valid if it bears a real and substantial relation to the public health, safety, morals or general welfare, and if it is not unreasonable or arbitrary. *Cincinnati* v. *Correll,* 141 Ohio St. 535; *Benjamin* v. *Columbus,* 167 Ohio St. 103."

"There is authority in Ohio for an even narrower limitation when First Amendment rights—such as the right of

free assembly—are threatened. Ohio has allowed an infringement of First Amendment rights if there exists 'a clear and present danger' to the community that can be met only by abridging, to some degree, one's right to free speech or free assembly. *State* v. *McLaughlin,* 4 Ohio App. 2d 327.'' (The last two paragraphs and the last two paragraphs at the bottom of page 196 quoted and cited from city of *Cleveland* v. *Anderson, supra,* at pages 203-4.

In the case at bar, the ''Congregating Ordinance'' was designed to meet a very serious problem in law enforcement—the incidence of and the increase in prostitution, gambling and narcotics. These are certainly legitimate areas of concern for a municipality and may, *by means of a properly drafted and constitutional ordinance,* be made the subject of legislation limiting the exercise of certain First Amendment rights (including that of free assembly), in the valid exercise of a municipality's police powers. See Section 3, Article XVIII of the Ohio Constitution and annotated cases, thereunder.

This court holds, however, that the ordinance in question is not constitutional—that the focus of the ''Congregating Ordinance,'' the problems of prostitution, narcotics and gambling that the ordinance was designed to meet, while very real and serious problems indeed, are not, in and of themselves, such as to constitute a real and present danger to the community or even a serious enough threat to the public health, safety, morals or general welfare so as to justify what is, in the court's opinion (for all of the reasons given above), an unreasonable and arbitrary exercise of the police power unduly infringing upon the constitutional right to free assembly under the First Amendment and the Ohio Constitution.

*The Conclusion.* As it is written, the ''Congregating Ordinance'' could be used to incriminate any group or individual who just happened to be in the wrong place at the wrong time. Because of the lack of standards, guidelines or definitions for police and citizens, anyone could become a congregator about a prohibited place or area and suffer the criminal consequences. Neither police nor citizen can

hope to conduct himself in a lawful manner if an ordinance which is designed to regulate conduct does not lay down ascertainable rules and guidelines to govern its enforcement. As written, the ordinance is vague, indefinite and violates the citizen's right to free and peaceful assembly and is thus an unconstitutional exercise of the police power by the city of Dayton and is void. *Cleveland* v. *Baker, supra*; *Toledo* v. *Sims, supra*; see also cases cited within body of opinion of *Cleveland* v. *Anderson, supra*, at page 205, first full paragraph.

Wherefore, since a criminal prosecution cannot proceed upon an ordinance which is void and unconstitutional, it is clear that the defendant's motion to dismiss the affidavit upon the grounds of the unconstitutionality of the "Congregating Ordinance" must be and is hereby sustained.

*Motion to dismiss sustained.*