CITY OF AKRON *v.* MASSEY ET AL.

(Nos. 78 CRB 00847, 78 CRB 00948 and 78 CRB 01365—
Decided April 25, 1978.)

Akron Municipal Court.

*Mr. Rick Dobbins,* for plaintiff.
*Mr. Michael C. Conway,* for defendants.

GEORGE, J. There is presently before the court a motion to dismiss two arrests brought pursuant to Section 648.01 of the Akron City Code 1970, as amended, on the basis that said ordinance is unconstitutional. The ordinance reads as follows:

"648.10 Loitering

"A. It shall be unlawful to do any of the following:

"1. Loiter or remain in a public place for the purpose of engaging, or soliciting another person to engage in sexual activity for hire. The circumstances which may be considered in determining whether such purpose is manifested are: That such person is a known prostitute or panderer, repeatedly beckons to, stops or attempts to stop, or engages passersby in conversation, or repeatedly stops or attempts to stop motor vehicle operators by hailing, waiving of arms or any other bodily gestures.

"2. Loiter or remain in or about the area of a school, college, or university, not having any reason or relationship involving custody of or responsibility for a pupil or student, or any other specific, legitimate reason for being there, and not having written permission from anyone authorized to grant the same.

"B. No arrest shall be made for a violation of this

section unless the arresting officer, by direct demand first affords such person an opportunity to explain such conduct.

"C. No person shall be convicted of a violation of this section if it appears at trial that the explanation tendered was true and disclosed a lawful purpose.

"D. Definitions. As used in this section:

"1. 'Known prostitute or panderer' means a person who, within a year previous to the date of arrest for a violation of this section, has, within the knowledge of the arresting officer been convicted of violating any ordinance of The City of Akron or statute of the State of Ohio defining and punishing acts of soliciting, committing, or offering, or agreeing to commit prostitution.

"2. 'Loitering' means remaining idle in essentially one place and shall include the concepts of spending time idly, loafing or walking about aimlessly.

"3. 'Public Place' means an area, either publicly owned or to which the public has access, where offenses relating to sexual conduct are known to have been committed.

"4. 'Sexual Activity' means sexual conduct or sexual contact, or both as defined in Section 666.01.

"E. Whoever violates this section is guilty of loitering, a minor misdemeanor."

Defendants argue that the ordinance is unconstitutional on the basis of vagueness and of overbreadth. They also argue that any judicial interpretation narrowing said vagueness and overbreadth would deny defendants due process on the grounds that they were not afforded fair notice at the time of the offense and trial to the subsequent creation of a new criminal sanction.

The void for vagueness doctrine is founded on the precept that any criminal ordinance must inform citizens what contemplated activity is forbidden by the statute. Any statute so loosely drawn that the man of average intelligence must guess as to its meaning violates the rudimentary precept of due process that no man should be held accountable for conduct that he could not reasonably understand to be proscribed. *United States v. Harriss* (1954), 347 U. S. 612, Annotation 12 A. L. R. 3d 1448. Moreover criminal stat-

utes must be "narrowly drawn so as not to encourage arbitrary and erratic arrests." *Thornhill* v. *Alabama* (1940), 310 U. S. 88.

There are two issues presented here. First whether the ordinance is sufficiently specific so that men of reasonable understanding need not guess at its meaning. Secondly, whether the ordinance is so lacking in guidelines of proscribed conduct as to permit arbitrary arrests by the police.

Defendants base their argument on *Papachristou* v. *City of Jacksonville* (1972), 405 U. S. 156 and cite numerous other cases to buttress their position. (*Seattle* v. *Drew* [1967], 70 Wash. 2d 405, 423 P. 2d 522; *Headley* v. *Selkowitz* [Fla. 1965], 171 So. 2d 368; *State* v. *Caez* [1963], 81 N. J. Super. 315, 195 A. 2d 496; *People* v. *Diaz* [1958], 4 N. Y. 2d 469, 176 N. Y. S. 2d 313.) The defendants take the position that the definition of loitering in the ordinance is so vague and elastic that men must necessarily guess at its meaning. However, *Papachristou* and the other cases cited can be readily distinguished from the one before the court. In all these cases "loitering" alone is made an offense. In the ordinance in question it is "loitering * * * for the purpose of engaging, or soliciting another person to engage in sexual activity for hire." In Section 648.10(A)(1) that is made a proscribed activity. Such a narrow concept is not vague and does not infringe upon areas of constitutionally protected activity. In *Seattle* v. *Jones* (1971), 79 Wash. 2d 626, 488 P. 2d 750, the court, in construing a virtually identical provision, found the language "clear and unambiguous." *Supra* at 752. Therefore, the ordinance is sufficiently specific so that men of reasonable understanding need not guess at its meaning.

The ordinance also is attacked in that it contains no standards to govern the exercise of discretion by the arresting officers. Defendants rely here on *Dayton* v. *Allen* (1971), 28 Ohio Misc. 181, 271 N. E. 2d 574, *inter alia*. Therein, the ordinance in question forbade congregating in or about any place where prostitution was carried on. The court noted that the risk of selective or discriminatory enforcement was overwhelming as the statute contained no as-

certainable standards of guilt. Once again the ordinance before the court can be distinguished as it does contain ascertainable standards of guilt. The ordinance has a list of guidelines which relate to the intent of the offending party by delineating instances of overt conduct that the officer can consider in determining whether there is loitering with the purpose of engaging in prostitution.

In *The Matter of D* (1976), 27 Ore. App. 861, 557 P. 2d 687, the court, reviewing a similar ordinance, noted, "The requirement that the vaguely described activity be circumscribed by reference to specific conduct is fulfilled when the reference is to an already existing non-vague criminal enactment or when the enactment itself delineates in its modifying language a specific nonvague offense." *Supra*, at 690. Herein there are clear and definite criteria whereby both the citizen and the arresting officer can judge whether the loitering involved is unlawful. The ordinance does not place "unfettered discretion" in the hands of the police. *State, ex rel. Williams,* v. *Tucson* (1974), 21 Ariz. App. 489, 520 P. 2d 1166. The ordinance, therefore, has met the requirement of sufficient standards.

Defendants also posit that Akron Ordinance No. 501-1975, of the Akron City Code 1970, as amended, is unconstitutional in that it is overbroad and allows constitutionally protected activity to be swept within its ambit. The Fourteenth Amendment to the U. S. Constitution "protects persons from incursions by the state into certain areas of their life, and an overbroad statute is constitutionally defective if it extends state criminal authority beyond the proper reach of government into one of these protected private areas." *State* v. *Starks* (1971), 51 Wis. 2d 256, 186 N. W. 2d 245, 249; *Dayton* v. *Allen, supra,* 28 Ohio Misc. 181, 271 N. E. 2d 574 and *City of Columbus* v. *DeLong* (1962), 173 Ohio St. 81, 180 N. E. 2d 158, are cited by defendants to bulwark this approach. In *Allen, supra,* the Dayton Municipal Court struck down the congregating ordinance noting that "* * * To meet constitutionally acceptable standards, the ordinance in question must prohibit not only congregating but also an additional course of conduct—crim-

inal conduct—on the part of those congregating." 271 N. E. 2d, at 579. Again the present statute is distinguishable in that it is concerned with loitering tied to the criminal purpost of soliciting. Similarly in *DeLong, supra,* the ordinance declared unconstitutional forbade the mere "wandering" of a known prostitute—under the Akron ordinance the loitering must be coupled with illegal purpose.

The Akron ordinance also conforms to the test outlined in *People* v. *Gibson* (1974), 184 Colo. 444, 521 P. 2d 774, in that the guidelines provided in the statute provide for indicia that couple overt conduct with purpose.

Therefore, the court holds that Akron Ordinance No. 501-1975 of the Akron City Code 1970, as amended, does not suffer from the constitutional infirmities of vagueness and overbreadth. The ordinance specifically delineates a very narrow class of forbidden conduct, and does not bring a constitutionally protected area of freedom within its purview.

**For the foregoing reasons, the defendant's motion to dismiss is overruled.**

*Motion to dismiss overruled.*