The defendant was charged with violating Section 11-7-33 of the General Code of the City of Birmingham, Alabama (1980) prohibiting soliciting for the purpose of prostitution.
The Complaint filed in the Circuit Court charged, in pertinent part:
 "that Oscar Short . . . unlawfully loitered or remained or wandered in a public place for the purpose of prostitution, or soliciting for prostitution or conducted himself in a manner or under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution in that defendant repeatedly stopped motor vehicles by hailing or waving arms, or using other bodily gestures, contrary to and in violation of Section 11-7-33 of the General Code of the City of Birmingham, Alabama, 1980, as amended."
After a nonjury trial, the Circuit Court found the defendant guilty as charged in the complaint. Sentence was sixty days hard labor.
At trial, evidence presented by the City showed that, on May 10, 1980, at approximately 2:15 A.M., two Birmingham police officers assigned to Vice Detail saw the defendant dressed in female clothing in the vicinity of 5th Avenue North and 18th Street in the downtown area of Birmingham. The officers were located approximately one-half block from the defendant and observed him for approximately ten minutes. They heard the defendant yell and saw him wave and attempt to flag down four or five passing cars. According to the policemen, one automobile, driven by a white male, stopped and the defendant leaned over the window of the car. Although the defendant appeared to have been talking with the driver, none of the conversation was heard by the officers. When the officers approached the automobile in their unmarked patrol car, the man drove away. The defendant was arrested at that time.
Testimony by the policemen showed that, within six months prior to the defendant's arrest, they had, on several occasions, observed the defendant dressed in female clothing and walking in the vicinity of 4th and 5th Avenue North from 16th Street to 19th Street, an area of downtown Birmingham known to be frequented by prostitutes. Those observations had usually occurred either late at night or in the early morning hours. No evidence was presented by the defendant.
 I
One of the two issues raised by the defendant concerns the constitutionality of Section 11-7-33 (b) of the General Code of the City of Birmingham (1980). In brief the defendant asserts that this section creates an unconstitutional presumption of guilt because it shifts the burden of proof to the accused and requires that he prove his innocence. The defendant also contends that his First and Fifth Amendment rights have been violated because the ordinance allows the police to make arrests arbitrarily. No cases in support of his argument have been cited by the defendant.
Section 11-7-33 (b) of the General Code of the City of Birmingham (1980) provides:
 "(b) No person shall loiter, lurk, remain or wander about in a public place, or in a place within view of the public, or in a place open to the public, for the purpose of prostitution or of patronizing a prostitute, or of soliciting for prostitution, and there conduct himself or herself in a manner *Page 520 
or under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution. Among the circumstances which may be considered in determining whether such a purpose is manifested are: that such person is a known prostitute or panderer, having been convicted within the past year under the terms of this or any other section or subsection of this chapter, the fact of such conviction being known to the arresting officer at the time of arrest herefor; that such person repeatedly beckons to, stops, attempts to stop, or interferes with the free passage of other persons, or repeatedly attempts to engage passersby in conversation; or that such person repeatedly stops or attempts to stop motor vehicle operators by hailing, waving of arms or other bodily gesture. No conviction shall be had under the terms of this subsection based on proof merely of a single instance of conduct described herein or only one (1) similar act, nor upon proof of only one (1) such instance in conjunction with proof of a prior conviction of an offense prescribed within this article."
 A
The defendant is not specific in asserting a Fifth Amendment violation; however, we may assume that his attack is grounded on a violation of the due process clause. Although the present case is one of first impression before this Court, several other jurisdictions have upheld the constitutionality of ordinances or statutes similar to Section 11-7-33 (b). SeeLambert v. City of Atlanta, 242 Ga. 645, 250 S.E.2d 456 (1978);People v. Smith, 44 N.Y.2d 613, 407 N.Y.S.2d 462,378 N.E.2d 1032 (1978); City of Akron v. Massey, 56 Ohio Misc. 22,381 N.E.2d 1362 (1978); In the Matter of D, 27 Or. App. 861,557 P.2d 687, appeal dismissed, 434 U.S. 914, 98 S.Ct. 385,54 L.Ed.2d 271; City of Seattle v. Jones, 79 Wn.2d 626,488 P.2d 750 (1971).
In People v. Smith, supra, a statute prohibiting loitering for the purpose of engaging in a prostitution offense was constitutionally challenged on the ground that the statute placed "unfettered discretion in the police in the arrest of violators", and, consequently, was "void for vagueness". The accused contended that this statute failed to pass the due process test of Grayned v. City of Rockford, 408 U.S. 104,92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). In Grayned, the United States Supreme Court stated:
 "(I)f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." 408 U.S. at 108-9, 92 S.Ct. 2299.
The New York Court of Appeals reasoned that the statute, which contains wording very similar to the Birmingham ordinance[1] outlined specific conduct, in addition to the loitering, which the officer was required to observe. As a result, the extent of the statute was limited to loitering for the purpose of perpetrating a specific crime. The Court held that the statute was "not invalid for vagueness because it details the prohibited conduct and limits itself to one crime."People v. Smith, supra.
The same issue was raised in City of Akron v. Massey, supra, by an accused who also alleged that the ordinance, which also contained wording very similar to the Birmingham *Page 521 
ordinance[2], had no standards to govern the exercise of discretion by the police in making arrests. The Ohio municipal court found the ordinance "sufficiently specific so that men of reasonable understanding need not guess at its meaning." The court also found that the ordinance contained "clear and definite criteria whereby both the citizen and the arresting officer can judge whether the loitering involved is unlawful."
 "(T)he ordinance . . . does contain ascertainable standards of guilt. The ordinance has a list of guidelines which relate to the intent of the offending party by delineating instances of overt conduct that the officer can consider in determining whether there is loitering with the purpose of engaging in prostitution. ___ The ordinance does not place unfettered discretion in the hands of the police." Massey, 56 Ohio Misc. 22, 381 N.E.2d at 1365.
In Lambert v. City of Atlanta, supra, the Supreme Court of Georgia held that a city ordinance prohibiting loitering for the purpose of soliciting for prostitution did not deny the accused due process of law.
 "The ordinance is not subject to this challenge since it details specific, prohibited conduct in language that is sufficiently definite to give a person of ordinary intelligence fair notice of what conduct is forbidden; and it gives to the police explicit standards, thereby avoiding the dangers of arbitrary and discriminatory enforcement. People v. Smith, 44 N.Y.2d 613, 407 N.Y.S.2d 462, 378 N.E.2d 1032 (Ct. of Appls.N.Y. 1978). The ordinance does not forbid all
loitering in public places, including legal `window shopping'. Rather, it is strictly limited to loitering in a public place for specific, illegal purposes. State v. City Court of Tucson, 21 Ariz. App. 489, 520 P.2d 1166 (1974). The provision giving the suspect an opportunity to explain his or her conduct does not require a different result. `(T)he opportunity to explain afforded by the ordinance is a safeguard designed to prevent wholesale preventive arrests — a practice which is repugnant to the constitutional guarantees of individual freedom.' City of Seattle v. Jones, 3 Wn. App. 431, 439, 475 P.2d 790, 796 (1970), affd. 79 Wn.2d 626, 488 P.2d 750 (1971)." Lambert, 242 Ga. 645, 250 S.E.2d at 457.
Again, this ordinance was similar to the one presently under review.[3]
A statute similar to the Birmingham ordinance under review was held not unconstitutionally vague by the Court of Appeals of Oregon in In the Matter of D, supra.
 B
The ordinance under review is not invalid on the theory that it creates an *Page 522 
unconstitutional presumption and shifts the burden of proof to the defendant. In City of Seattle v. Jones, supra, the accused maintained that a Seattle ordinance[4] against loitering created an unconstitutional presumption of guilt in violation of due process because no proof of intent was required by the ordinance. Holding that it was not invalid on such a theory, the Supreme Court of Washington stated:
 "The ordinance forbids loitering `in a manner and under circumstances manifesting' an unlawful purpose, the unlawful purpose being to induce another to commit an act of prostitution. According to Ballentine's Law Dictionary 1028 (3d ed. 1969), `purpose' is defined as `An intention'. Therefore, intent is required under ordinance No. 97316. __ Loitering is an overt act. Intent may be inferred therefrom by conduct when it is plainly indicated as a matter of logical probability." Jones, 79 Wn.2d 626, 488 P.2d at 752.
In our opinion, Section 11-7-33 (b) requires proof of intent, which may be inferred from conduct, and creates no unconstitutional presumption of guilt. It does not permit arrests to be made arbitrarily and only at the whim of a police officer. The ordinance does not make the accused's innocence or guilt dependent on subjective conclusions of the arresting officer. "Explicit standards" for application by policemen are contained in the ordinance; consequently, the dangers of "arbitrary and discriminatory enforcement" are avoided. SeeGrayned, supra. It is our judgment that Section 11-7-33 (b) is not in violation of the defendant's Fifth Amendment constitutional rights.
 C
The defendant also asserts, without any degree of specificity, that Section 11-7-33 (b) is violative of his First Amendment constitutional rights. In Grayned, supra, the United States Supreme Court stated, "A clear and precise enactment may nevertheless be `overbroad' if in its reach it prohibits constitutionally protected conduct." We perceive the issue presented by the defendant in the present case to be whether Section 11-7-33 (b) "sweeps within its prohibitions what may not be punished" under the First Amendment. Grayned, supra. We hold that Section 11-7-33 (b) does not infringe upon First Amendment rights. The reach of the ordinance is limited to conduct "for the purpose of prostitution, or of patronizing a prostitute, or of soliciting for prostitution." Section 11-7-33 (b). We agree with the New York Court in People v. Smith, supra, that such behavior "has never been a form of constitutionally protected free speech." See Broadrick v.Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973);Shuttlesworth v. Birmingham, 382 U.S. 87, 86 S.Ct. 211,15 L.Ed.2d 176 (1965).
 II
A second issue submitted for review is whether the evidence presented by the City was sufficient to sustain appellant's conviction. To support a conviction for loitering for the purpose of a prostitution offense the following elements must be proved: (1) loitering; (2) in a public place; (3) for the purpose of prostitution, patronizing a prostitute or soliciting for prostitution; and (4) conduct by the defendant which, under the circumstances, manifests the purpose of soliciting *Page 523 
another to commit an act of prostitution.
At the trial, the City presented evidence which showed that the defendant, while standing on a street in Birmingham's business district, repeatedly waved at and attempted to flag down several passing automobiles, one of which stopped to allow the driver to converse with the defendant. The conduct occurred at 2:15 A.M. in an area known to be an area frequented by prostitutes and the male defendant was dressed in women's clothes. Also, the defendant had been observed in the area on prior occasions under similar circumstances.
The conduct of the defendant and the circumstances surrounding that conduct provide sufficient evidence to justify the belief by the trier of fact that the defendant is guilty of the offense of loitering for the purpose of soliciting for prostitution. "In the admission of evidence and the weight to be given the same courts and juries must use common sense, common reason, and common observation as well as a common knowledge of the usual acts of men and women under given circumstances." Thompson v. State, 21 Ala. App. 498, 499,109 So. 557 (1926). The findings of the trial judge in a nonjury trial have the weight of a jury's verdict and will not be disturbed on appeal unless they are obviously unjust. Kelly v.State, 273 Ala. 240, 139 So.2d 326 (1962).
Having found no error prejudicial to the defendant, we hold that the judgment of conviction by the Jefferson Circuit Court is affirmed.
AFFIRMED.
All Judges concur.
[1] The relevant language of section 240.37 of the New York Penal Law provides:
"Any person who remains or wanders about in a public place and repeatedly beckons to, or repeatedly stops, or repeatedly attempts to stop, or repeatedly attempts to engage passers-by in conversation, or repeatedly stops or attempts to stop motor vehicles, or repeatedly interferes with the free passage of other persons, for the purpose of prostitution, or of patronizing a prostitute as those terms are defined in article two hundred thirty of the penal law, shall be guilty of a violation."
[2] The relevant language of Section 648.01 of The Akron City Code 1970, as amended, provides:
"A. It shall be unlawful to do any of the following:
"1. Loiter or remain in a public place for the purpose of engaging, or soliciting another person to engage in sexual activity for hire. The circumstances which may be considered in determining whether such purpose is manifested are: That such person is a known prostitute or panderer, repeatedly beckons to, stops or attempts to stop, or engages passersby in conversation, or repeatedly stops or attempts to stop motor vehicles by hailing, waving of arms or any other bodily gestures."
[3] "The ordinance in issue provides in relevant part: `It shall be unlawful for any person to loiter in or near any thoroughfare or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution or sodomy. Among the circumstances which may be considered in determining whether such purpose is manifested are: that such person is a known prostitute, pimp, or sodomist, repeatedly beckons to, stops or attempts to stop, or engages passers-by in conversation, or repeatedly stops or attempts to stop motor vehicle operators by hailing, waiving of arms or any bodily gesture. No arrest shall be made for a violation of this subsection unless the arresting officer first affords such person an opportunity to explain such conduct, and no one shall be convicted of violating this subsection if it appears at trial that the explanation given was true and disclosed a lawful purpose.'" Lambert, 242 Ga. 645, 250 So.2d at 457.
[4] Seattle City Code, Section 12.49.010 provides: "It is unlawful for anyone:
* * * * * *
"(g) To loiter in or near any thoroughfare or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution. Among the circumstances which may be considered in determining whether such purpose is manifested: that such person is a known prostitute or panderer, repeatedly beckons to, stops or attempts to stop, or engages male passers-by in conversation, or repeatedly stops or attempts to stop motor vehicle operators by hailing, waving of arms or any other bodily gesture. No arrest shall be made for a violation of this subsection unless the arresting officer first affords such person an opportunity to explain such conduct, and no one shall be convicted of violating this subsection if it appears at trial that the explanation given was true and disclosed a lawful purpose."