# STATE v. GAYLE JEAN ARMSTRONG.

162 N. W. (2d) 357.

November 8, 1968—Nos. 41212, 41213.

*Ellis Olkon* and *Sheldon Joseph Eviden,* for appellant.

*Keith M. Stidd,* City Attorney, and *Robert J. Alfton* and *Edward C. Vavreck,* Assistant City Attorneys, for respondent.

PETERSON, JUSTICE.

Defendant, a prostitute who allegedly solicited two men for purposes of prostitution, was tab charged and convicted in Hennepin County Municipal Court of violating the so-called "loitering" and "lurking" ordinances of the city of Minneapolis. Minneapolis Ordinance § 870.010, labeled as the "vagrancy" ordinance, provides in relevant part:

"No person shall *loiter* on the streets or in a public place or in a place open to the public *with intent to solicit for purposes of prostitution or any other act prohibited by law.*"[1] (Italics supplied.)

Minneapolis Ordinance § 870.050, labeled as the "lurking" ordinance, provides:

"No person, in any public or private place, shall *lurk,* lie in wait or be concealed *with intent* to do any mischief or *to commit any crime or unlawful act.*" (Italics supplied.)

The constitutionality of both ordinances is challenged on the fundamental ground that they are so vague and indefinite as to establish no clear standard of criminal conduct, thereby violating the due process requirements of the Fourteenth Amendment. The convictions are additionally attacked on evidentiary grounds.

█   We hold that the ordinances are not unconstitutionally vague and indefinite or violative of constitutional due process. Ordinances like those of Minneapolis, we note at the outset, are neither novel nor unprecedented. Similar statutes have existed in this state for more than half a century,[2] and a variety of such ordinances and statutes exist in numer-

---

[1] A prior paragraph of this ordinance not here involved reads: "No person who has no visible means of support, who has no known place of abode, or who is unwilling or unable satisfactorily to account for himself, shall loiter or wander idly in public places."

[2] L. 1909, c. 487, formerly coded as Minn. St. 1961, § 614.57(4), defined

ous other jurisdictions.[3] Our original statute, less precise and specific in terms than the present state statute or the provisions of the ordinances immediately before us, was sustained against the constitutional challenge of vagueness by a unanimous court in State v. McCorvey, 262 Minn. 361, 114 N. W. (2d) 703. The United States Supreme Court has twice recently declined to consider the constitutional issues raised by a municipal ordinance and a state statute no more precise and definite than the statute considered in State v. McCorvey, *supra.* In Hicks v. District of Columbia, 383 U. S. 252, 253, 86 S. Ct. 798, 15 L. ed. (2d) 744, 745, the court dismissed, as improvidently granted, a writ of certiorari to review a District of Columbia ordinance defining a "vagrant" as "[a]ny person leading an immoral or profligate life who has no lawful employment and who has no lawful means of support realized from a lawful occupation or source." In Johnson v. Florida, 391 U. S. 596, 88 S. Ct. 1713, 20 L. ed. (2d) 838, the court considered a conviction under a Florida statute making it a misdemeanor to be found "wandering or strolling around from place to place without any lawful purpose or object." The conviction was reversed per curiam, but only on the ground that proof

as a vagrant: "A common prostitute who shall be found wandering about the streets, or loitering in or about any restaurant, lodging house, saloon, or place where intoxicating liquors are sold."

The Criminal Code of 1963 repealed that statute and replaced it with Minn. St. 609.725(3), which defines as a vagrant: "A prostitute who loiters on the streets or in a public place or in a place open to the public with intent to solicit for immoral purposes."

[3] See, e. g., the ordinances or statutes involved in Hicks v. District of Columbia, 383 U. S. 252, 86 S. Ct. 798, 15 L. ed. (2d) 744; Johnson v. Florida, 391 U. S. 596, 88 S. Ct. 1713, 20 L. ed. (2d) 838, noted in the text. See, also, illustrative of enactments held valid: In re Cregler, 56 Cal. (2d) 308, 14 Cal. Rptr. 289, 363 P. (2d) 305; People v. Merolla, 9 N. Y. (2d) 62, 211 N. Y. S. (2d) 155, 172 N. E. (2d) 541; Clark v. District of Columbia (D. C. Mun. App.) 34 A. (2d) 711; City of Portland v. Goodwin, 187 Ore. 409, 210 P. (2d) 577; and held invalid: City of Seattle v. Drew, 70 Wash. (2d) 405, 423 P. (2d) 522; State v. Caez, 81 N. J. Super. 315, 195 A. (2d) 496; City of Akron v. Effland, 112 Ohio App. 15, 174 N. E. (2d) 285; People v. Diaz, 4 N. Y. (2d) 469, 176 N. Y. S. (2d) 313, 151 N. E. (2d) 871; Soles v. City of Vidalia, 92 Ga. App. 839, 90 S. E. (2d) 249.

that the defendant was sitting on a park bench at 4:25 a. m. fell short of proving the essential element of "wandering or strolling." [4]

The bare words "loitering" or "lurking" are not as ambiguous or vague as might appear from first impression, even taken out of statutory context. "When a legislative act has as its purpose the prohibition of an undesirable form of conduct rather than a specific act," as was reiterated in McCorvey (262 Minn. 365, 114 N. W. [2d] 706), "the definition by its very nature must be broad." "Loitering" has been held to be a term of common usage with a meaning reasonably understood by persons of common intelligence. State v. McCorvey, *supra*; People v. Merolla, 9 N. Y. (2d) 62, 211 N. Y. S. (2d) 155, 172 N. E. (2d) 541; In re Cregler, 56 Cal. (2d) 308, 14 Cal. Rptr. 289, 363 P. (2d) 305. "Lurking" is no less a word of accepted definition reasonably understandable to the ordinary person. [5] Although "lurking" may have a primary connotation of hiding or concealment, it equally connotes a persistent presence or a furtive movement in a place. See, Webster's Third New International Dictionary (1961) p. 1348; The Random House Dictionary of the English Language, p. 854; The Oxford New English Dictionary of Historical Principles, p. 509. [6] Despite doubtless difference in nuance, "lurking" is not significantly different from "loitering."

The offense defined by each of the two ordinances consists of two essential elements: (1) The act of lurking or loitering, and (2) a proved intent to commit an unlawful act. [7] Whatever the arguable ambiguity or gen-

---

[4] Mr. Justice Black and Mr. Justice Stewart, dissenting, would have dismissed the appeal. Mr. Justice White, joined by Mr. Justice Harlan in dissent, significantly noted (391 U. S. 599, 88 S. Ct. 1715, 20 L. ed. [2d] 841): "The Court does not reach the claim appellant makes here, that Florida's statute offends the Constitution because it is vague. That claim is substantial, and I would note probable jurisdiction and set the case for oral argument."

[5] Defendant herself did not appear to misunderstand it when she asserted a reluctance to walk down the street "[b]ecause I knew if I walked down the street they [the police] would arrest me for lurking."

[6] The Concise Oxford Dictionary (5 ed.) p. 728, compares "lurk" to the Norwegian word "lurka," meaning "sneak forth."

[7] Conspicuous examples of the same statutory structure are Minn. St. 609.58, which defines "burglary" as the unconsented-to entry into a building

erality as to the element of "lurking" or "loitering," there is none whatever as to the element of intent. The element of intent gives meaning to the element of lurking or loitering and is a rational basis for proscribing such acts as harmful conduct. Both elements of the offense must, of course, be proved. The overt act of lurking or loitering, standing alone, is not made punishable by the provisions of the ordinances under which defendant was charged. An unlawful intent, without more, is not made punishable. Because of this required union of overt act and unlawful intent, defendant is protected from punishment either for harmless conduct or for harmful conduct the criminality of which had not been fairly communicated to her. See, Omaechevarria v. Idaho, 246 U. S. 343, 38 S. Ct. 323, 62 L. ed. 763; Hygrade Provision Co. v. Sherman, 266 U. S. 497, 45 S. Ct. 141, 69 L. ed. 402; Screws v. United States, 325 U. S. 91, 65 S. Ct. 1031, 89 L. ed. 1495.

■ The act of lurking or loitering, with the intent to solicit for the purpose of prostitution or other unlawful act, must be proved by a fair preponderance of the evidence. State v. Miller, 253 Minn. 112, 116, 91 N. W. (2d) 138, 141. A consideration of the evidence adduced in the lurking case will suffice to illustrate the problems of proof in both of these cases.[8]

It is undisputed that on May 24, 1967, between 10 and 11 p. m., defendant was seated with a female companion in a restaurant known as the Green Shoppe, located between Fourth and Fifth Streets on Hennepin Avenue. It is undisputed, also, that she was a previously convicted prostitute, for it was both testified to by one of the arresting officers and was acknowledged by her own attorney in final argument in the trial court.

We consider, first, the testimony of Jerry F. Torrey and Raymond J. Merchant, police morals squad officers who arrested defendant. They ob-

---

"with intent to commit a crime therein," and 18 USCA, § 2113(a), which makes it a crime to enter banks "with intent to commit * * * any felony."

[8] The testimony in the loitering trial was not reported, so a stipulated statement of facts has been supplied. Such statement of facts is hardly adequate for a detailed review, but the similarity of the two cases dictates the same disposition.

served defendant from a distance of about 150 to 200 feet from the restaurant, standing on Hennepin Avenue. Their unmarked police squad car was parked on Fifth Street just off Hennepin, facing in the direction of First Avenue North. A late model Chevrolet automobile driven by a man stopped in front of the Green Shoppe, at which time defendant promptly came out from the restaurant and entered the open door of the automobile. The Chevrolet then drove off, and the officers followed it in their squad car. The route of the Chevrolet was a circular route: A right turn from Hennepin Avenue onto Fifth Street and thence to its intersection with Second Avenue North, two blocks distant; a right turn onto Second Avenue and thence to its intersection with Fourth Street; a right turn onto Fourth Street, driving past First Avenue North and in the direction of Hennepin Avenue again; a right turn about a half block short of Hennepin Avenue into an alley running parallel to Hennepin Avenue from Fourth Street to Fifth Street. The officers, noting this curious route and assuming that their tailing presence had been discovered by the Chevrolet's occupants, followed into the alley. The Chevrolet stopped momentarily, at which time defendant got out of the Chevrolet; it then proceeded on to the alley's Fifth Street exit, where it was stopped by Officer Torrey. Defendant and her male companion were then brought into the squad car together, where a conversation ensued (the purported substance of which will be considered under point 3).

We consider, second, defendant's testimony accounting for her observed activity. She was seated in the Green Shoppe, defendant testified, having a coke and hamburger with a female companion. Although she did not know her companion's occupation, both had seen Officers Torrey and Merchant on the street and both recognized the officers as members of the morals squad. The two women were afraid to leave the restaurant, defendant said, "because we didn't want to get arrested for lurking"—that "every time Morals officers see you they arrest you for lurking whether you are lurking or not." Nevertheless, defendant did leave to go to her own automobile, which was located in a parking lot on Hennepin Avenue between the restaurant and *Fourth* Street. Contrary to the testimony of Officer Torrey that the squad car was parked on *Fifth* and Hennepin—in the opposite direction from her parking lot—

defendant asserted that the squad car was parked at the Hennepin Avenue entrance to her parking lot. Defendant explained that she accordingly undertook to take an indirect route to her automobile by way of Fifth Street and around to the back alley access to the parking lot, the place where she was arrested. While thus en route, the Chevrolet drove up and its driver, whom she had never seen before, opened the door and asked her if she would like a ride. She affirmed that she would like a ride "around to the parking lot." She stated that the route of the automobile was as the officers described except that they had proceeded on First Avenue North, not Second Avenue, a trip two blocks shorter. After she got into the automobile, she testified, the stranger "asked me if I wanted to have a party for twenty dollars," but she declined.

The trial court, of course, was not compelled to believe defendant's version of the activity. But there is more to this than simple rejection of the defendant's testimony and acceptance of the officers' testimony. We think, in these unusual circumstances, that the nature of the defendant's testimony itself may result in affirmative inferences of fact. Where a known prostitute, present in an area where the solicitation of prostitution is apparently rife, enters an automobile of a total stranger—circumstances constituting a marked departure from community mores—and where she either offers no account of her actions or, as here, volunteers a palpably preposterous account, an affirmative inference of intended unlawful purpose might reasonably be drawn by the court. A right sensitivity to the freedom of citizens, including prostitutes, to be free from unreasonable interference with ordinary movement in public places does not, we think, demand complete departure from reality. This is not, however, an invitation to arbitrary and capricious determinations by the police or courts, for the substantiality of the evidence and the rationality of the inference of an unlawful intent must be scrutinized to avoid mere harassment or unfounded charges and convictions that are otherwise offensive to due process.

■ We nevertheless must reverse the judgments of convictions in these cases, for we do not know that they were actually based upon such permissible inferences of unlawful intent. The convictions may, instead,

have been based upon other evidence which we hold to be plainly inadmissible and prejudicial. Officer Torrey was permitted to testify, over objection, to the following conversation at the time defendant and the driver of the Chevrolet were seated together in the squad car with the two officers:

"[The driver of the Chevrolet] stated that after [the defendant] had got into his vehicle in front of the Green Shoppe she asked him if he wanted to party. After more conversation, the price of twenty dollars was agreed upon."

Asked for defendant's response, if any, Officer Torrey testified:

"I don't really recall. *I think she denied it.*"[9] (Italics supplied.)

That the officer's testimony relating the declarant's extrajudicial statement is not admissible as substantive evidence is beyond question, for it is hearsay. State v. Gulbrandsen, 238 Minn. 508, 513, 57 N. W. (2d) 419, 423. We reject the state's contention that the declaration is admissible as an exception to the exclusionary hearsay rule either as a res gestae utterance of the accusing declarant or as the predicate for inferring a tacit admission by the accused defendant. The declaration was most probably exculpatory and self-serving, negating the essential res gestae requirement of spontaneity. Meyer v. Travelers Ins. Co. 130 Minn. 242, 153 N. W. 523. There is no basis whatever for an inference that defendant tacitly admitted the accusation made in her presence by the declarant, for, as the officer witness himself made clear, defendant had expressly denied the accusation.[10]

---

[9] Officer Merchant subsequently testified to the same effect. Although specific objection was not interposed to this testimony, we think that defendant had sufficiently raised the issue of the inadmissibility of such crucial testimony so that the prosecution should not have undertaken to use it or the court sua sponte should have excluded it. See, Sanchez v. United States (8 Cir.) 293 F. (2d) 260; Garboctowski v. State, 32 Del. 386, 123 A. 395.

[10] The problem of proof in these cases, of course, is attributable to the absence from court of the declarant himself. Our decision in this case does not necessarily foreclose such evidence of tacit admission where an appropriate factual foundation for such inference is presented; see, 29 Am. Jur. (2d) Evidence, §§ 633 to 645; 2 Wharton, Criminal Evidence (12 ed.) §§ 405 to

The judgment of conviction in each case is reversed and a new trial upon each charge is ordered.

407; State v. Brown, 209 Minn. 478, 296 N. W. 582; State v. Gulbrandsen, 238 Minn. 508, 57 N. W. (2d) 419; State v. Rediker, 214 Minn. 470, 8 N. W. (2d) 527. Incriminating evidence of this character should be received, however, with caution; indeed, where the unavailability of the declarant to give directly incriminating testimony himself at trial is not reasonably explained and the conviction is otherwise supportable only by an inferred admission, it is to be received with great caution.