[Nos. 337-1, 338-1. Division One—Panel 1. October 19, 1970.]

THE CITY OF SEATTLE, *Respondent,* v. JOHNAPHRA JONES, *Appellant.*

*Irving C. Paul, Jr.* and *Roger W. Johnson,* for appellant.

*A. L. Newbould, J. Roger Nowell,* and *Philip M. King,* for respondent.

JAMES, C. J.—In two King County causes, Johnaphra Jones was found guilty of conduct proscribed by a section of an ordinance of the City of Seattle which defines and makes unlawful the practice of prostitution. Her appeals have been consolidated for review. The ordinance in its entirety is as follows:

It is unlawful for anyone:

(a) To commit or offer or agree to commit an act of prostitution; or

(b) To secure or offer to secure another for the purpose of committing an act of prostitution; or

(c) To knowingly transport a person into or within the city with purpose to promote that person's engaging in prostitution, or procuring or paying for transportation with that purpose; or

(d) To knowingly receive, offer or agree to receive another into any place or building for the purpose of performing an act of prostitution, or to knowingly permit another to remain there for any such purpose; or

(e) To direct another to any place for the purpose of committing an act of prostitution; or

(f) To knowingly in any way aid, abet or participate in an act of prostitution; or

(g) To loiter in or near any thoroughfare or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution. Among the circumstances which may be considered in

determining whether such purpose is manifested: that such person is a known prostitute or panderer, repeatedly beckons to, stops or attempts to stop, or engages male passers-by in conversation, or repeatedly stops or attempts to stop motor vehicle operators by hailing, waving of arms or any other bodily gesture. No arrest shall be made for a violation of this subsection unless the arresting officer first affords such person an opportunity to explain such conduct, and no one shall be convicted of violating this subsection if it appears at trial that the explanation given was true and disclosed a lawful purpose.

For the purpose of this section, a "known prostitute or panderer" is a person who, within one year previous to the date of arrest for violation of this section, has within the knowledge of the arresting officer been convicted of violating any ordinance of the city of Seattle defining and punishing acts of soliciting, committing, or offering or agreeing to commit prostitution.

For the purpose of this chapter "prostitution" means engaging for hire in sexual activity, including homosexual or other deviate sexual relations. (Ord. 73095 § 1 as amended by Ord. 97316 § 1; December 19, 1968).

Seattle City Code 12.49.010.

Miss Jones was charged with "loitering" as defined in subsection (g). She challenges her convictions solely on constitutional grounds.

It is undisputed that Miss Jones had a record of recent convictions for prostitution known to the arresting officers and that on the occasion of each arrest in the two cases which are here consolidated for appeal she was observed to repeatedly accost men on a public thoroughfare, asking them if they were "dating."

The "loitering" section of the ordinance was enacted after Seattle's then loitering ordinance was held to be unconstitutionally vague. *Seattle v. Drew*, 70 Wn.2d 405, 423 P.2d 522 (1967). The ordinance voided in *Drew* provided as follows:

> It shall be unlawful for any person wandering or loitering abroad, or abroad under other suspicious circumstances, from one-half hour after sunset to one-half hour before sunrise, to fail to give a satisfactory

account of himself upon the demand of any police officer.

*Seattle v. Drew, supra* at 406.

■■ Judicial testing of a statute or ordinance must proceed from a presumption that it meets constitutional requirements. *Seattle v. Drew, supra.* Consideration of a "loitering" ordinance must additionally recognize that the right to be left alone is of the essence of individual freedom. As stated in *Seattle v. Drew, supra* at 408, "interference with that right is to be tolerated only if it is necessary to protect the rights and the welfare of others."

Are the "rights and welfare" of society threatened and diminished by prostitution? Judge James A. Noe of the Seattle Municipal Court in a memorandum opinion in another case involving Miss Johnaphra Jones accurately described prostitution's insidious evil.

> Prostitution is destructive of human personality and because it appeals to the baser instincts it also breeds other crimes of violence and lawlessness including larceny, assault, use of drugs, blackmail and other anti-social conduct. So often laws and ordinance aimed at forbidding prostitution are misunderstood as pious moral judgments on adult conduct when it is obvious to those who are exposed to prostitution that the side effects are the real threats to the health and welfare of the community.

■ The ordinance, the constitutionality of which we must test, is a product of society's continuing, but still unsuccessful, search for a means to control the evils of prostitution. Clearly the achievement of such objective is a legitimate exercise of the police power.

> Thus, even though it may be difficult to formulate a satisfactory definition of the term "police power," there seems to be no doubt that the power extends to the protection of the lives, health, and property of the citizens, to the preservation of good order and the public morals, to the restraint and punishment of crime, and to the preservation of the general welfare of the community. In general, it extends to the enactment of all such wholesome and reasonable laws not in conflict with the constitution of the state or the United States as may be deemed conducive to the public good.

(Footnotes omitted.) 16 Am. Jur. 2d *Constitutional Law* § 306 (1964).

In concluding that Seattle's earlier ordinance was unconstitutionally vague, the court ruled in *Seattle v. Drew, supra* at 410:

> The Seattle ordinance imposes sanctions upon conduct that may not *manifest an unlawful purpose,* and, therefore, is violative of due process of law. The language of the ordinance is too broad; it is vague. A citizen cannot determine its meaning so that he may regulate his conduct. There is nothing in the ordinance that would enable him to know the dividing line between innocent loitering (for example, window shopping) 'and criminal loitering. Loitering ordinances that fail to spell out this distinction have been struck down. [Citations omitted.]
>
> The Seattle ordinance makes no distinction between conduct calculated to harm and that which is essentially innocent.

(Italics ours.) (Footnotes omitted.)

Miss Jones first asserts that Seattle's latest attempt to draft a constitutionally defensible ordinance has also failed because of the vice of vagueness.

■ *Drew* holds that an ordinance may not constitutionally impose sanctions upon *innocent* loitering. *Criminal* loitering, however, may be proscribed. But to meet constitutional standards of clarity, an ordinance forbidding *criminal* loitering must specify and describe overt conduct in words the meaning of which men and women of "reasonable understanding are not required to guess . . ." *Seattle v. Drew, supra* at 408. Although a precise statutory definition of unlawful loitering may present drafting difficulties,

> lack of precision is not itself offensive to the requirements of due process. ". . . [T]he Constitution does not require impossible standards"; all that is required is that the language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. . . ." *United States v. Petrillo,* 332 U.S. 1, 7-8.

*Roth v. United States,* 354 U.S. 476, 491, 1 L. Ed. 2d 1498, 77 S. Ct. 1304 (1957).

Miss Jones asserts that the ordinance is vague and indefinite in two critical respects. First, she says the ordinance, except by reference to examples, fails to describe overt conduct which constitutes "criminal" as distinguished from "innocent" loitering.

■ We find this criticism to be without merit. It is first to be noted that the ordinance in *Drew* merely proscribed "loitering," a term which in itself contains no implication of unlawful conduct. But the ordinance before us forbids loitering "in a manner and under circumstances manifesting" an unlawful purpose. The unlawful purpose is specified—to induce another to commit an act of prostitution. The examples of such unlawful overt conduct are not made exclusive. But they do bring the more general description of the overt conduct into clear focus.

■ Additionally, it is to be noted that the "loitering" of which Miss Jones was convicted is not loitering in the abstract. It is "loitering" defined as a part of the ordinance which makes prostitution a crime.

> In the case of a statute that deals with offenses difficult to define, the entire text of the statute or the subject dealt with may furnish an adequate standard of definiteness.

(Footnote omitted.) R. Anderson, 1 Wharton's Criminal Law and Procedure, § 18 (1957). When subsection (g) of the ordinance is read as a part of the entire ordinance, it is apparent that "loitering" of a readily recognizable type and character is very precisely described.

We next consider Miss Jones' second attack. She asserts that "[n]owhere does the ordinance require actual proof of a *real and present* intent." She points out that nowhere in subsection (g) of the ordinance is the word "intent" used. She concludes that the ordinance would permit conviction if the accused loitered in a manner which could be viewed as manifesting a purpose of inducing another to commit an act of prostitution, even though the loitering was in fact the artless activity of a guileless innocent. As an example Miss

Jones suggests an imprudently conceived and quixotic sorority initiation prank.

 Prostitution is unquestionably a crime involving moral turpitude.

> A crime involves moral turpitude if it is an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men or to society in general.

(Footnote omitted.) 21 Am. Jur. 2d *Criminal Law* § 24 (1965). Crimes involving "moral turpitude" are categorized as "acts mala in se" as distinguished from "acts mala prohibita," offenses made wrongful only because the law forbids them. 21 Am. Jur. 2d *Criminal Law* § 25 (1965); *State v. Turner,* 78 W.D.2d 276, 474 P.2d 91 (1970).

> Although the legislature and the state's political subdivisions under the police power may in some circumstances declare certain acts, conduct or omissions criminal without regard to the intent or knowledge of the actor, guilty knowledge will be deemed an essential ingredient if the defined crimes involve moral turpitude.

*State v. Turner, supra* at 280. If, therefore, guilty knowledge is deemed to be an essential ingredient of the crime, proof of a "felonious intent" becomes an essential element of the crime. If not made an element by express statutory language, it will be implied. *Morissette v. United States,* 342 U.S. 246, 96 L. Ed. 288, 72 S. Ct. 240 (1952).

> [U]nless the statute expressly eliminates the element of intent or design or defines the kinds of offenses which, by their very nature, are classified judicially as mala prohibita, the ingredients of intent, design and purpose should be deemed indispensable to a proof of guilt.

*State v. Turner, supra* at 282. Subsection (g) of the ordinance does not expressly eliminate the element of intent and it is therefore implied. The complaints against Miss Jones charge that she "did wilfully and unlawfully loiter . . . ."

We conclude, therefore, that subsection (g) of the ordinance describes an offense, malum in se, consisting of two elements: (1) intent, and (2) an overt act. The indispensa-

ble "intent" which is necessarily *implied,* is to induce another to commit an act of prostitution. The "overt act," which is *described,* is to loiter in a criminal manner. As we have found, the overt conduct denoting criminal loitering is described in words which are constitutionally explicit.

Miss Jones additionally argues that the ordinance creates an unconstitutional presumption of guilt and shifts the burden of proof to an accused. She further asserts that her privilege against self-incrimination has been violated and that the language of the ordinance denies her equal protection of the law.

The contention that the ordinance creates a presumption of guilt and shifts the burden of proof is related by Miss Jones to her assertion that no proof of "intent" is required by the ordinance. We have already disposed of this assertion, having found that intent is a necessary element of the crime.

Further, we find that none of the language of subsection (g) places a burden upon an accused. None of the language relieves the prosecution of its burden to prove both elements of the crime beyond a reasonable doubt.

The fact that a suspect may be a "known" prostitute is not made prima facie evidence of intent by the ordinance. Nor does the ordinance by its terms create any presumption of guilt. But even if the ordinance did so provide, the prosecution would not be relieved of its primal burden.

> Even though the accused introduces no evidence whatever, the existence of the fact presumed still remains a question of fact to be determined by the jury and the presumption following from proof of the fact proved is not conclusive upon the jury. They may still return a verdict in favor of the defendant even though they found the fact proved beyond a reasonable doubt.

*State v. Palmer,* 2 Wn. App. 863, 865, 471 P.2d 118 (1970). The fact that a suspect is known to be a prostitute is but one of the circumstances which *may* be considered by an arresting officer in determining whether there is a probable cause for arrest. But, a suspect's immunity from arrest without probable cause is augmented rather than dimin-

ished by the reference to a "known prostitute" in subsection (g) of the ordinance.

Most significantly, however, the ordinance in no way requires that the ultimate determination of guilt or innocence be related to the arresting officer's knowledge.

■ The ordinance in no way infringes upon a suspect's privilege against self-incrimination. It is not only the right, it is obviously the duty of an officer to arrest when a misdemeanor has been committed in his presence. While an officer can observe an overt act he must, in most instances, infer intent from circumstantial evidence. Interrogation of a suspect—asking for an explanation for the apparent commission of an unlawful act—is an approved and a rational investigatory procedure even though not required by the statute or ordinance defining the crime.

> Our decision is not intended to hamper the traditional function of police officers in investigating crime. See *Escobedo v. Illinois*, 378 U.S. 478, 492. . . . General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement.

*Miranda v. Arizona*, 384 U.S. 436, 477, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). No law can constitutionally require a suspect to answer on pain of a conviction for failure to answer. U.S. Const. amend. 5. Nor does the ordinance so provide. But, at trial, evidence of a suspect's refusal to answer when given an opportunity to explain proscribed conduct is a circumstance which may be considered by the trier of fact.

On the contrary, the opportunity to explain afforded by the ordinance is a safeguard designed to discourage wholesale preventive arrests—a practice which *is* repugnant to the constitutional guarantees of individual freedom. U.S. Const. amend. 5.

Miss Jones' final argument is that the ordinance provides for the introduction of the criminative evidence that a person is a "known prostitute" in an arbitrary and capricious

manner without any rational basis of distinction between certain classes of possible offenders and therefore results in a denial of her right to equal protection of the law. She says that "[t]he t[h]rust of [her] argument is grounded on the fact that one cannot be a 'known prostitute' unless the prior conviction was 'within the knowledge of the arresting officer.' "

The basic constitutional rule urged by Miss Jones is stated in *Allied Stores of Ohio v. Bowers*, 358 U.S. 522, 527, 3 L. Ed. 2d 480, 79 S. Ct. 437 (1959):

> But there is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation."

The answer to this final contention is that the ordinance does *not* create two classes of persons which are tried differently. The ordinance applies to *all* persons who violate the ordinance, without regard to their possible status as a "known prostitute."

However, evidence of a prior conviction for prostitution *is* an evidentiary circumstance which may tend to prove the element of intent.

> [The] rule, [that evidence of a collateral crime is inadmissible] has its well-defined and well-recognized exceptions, as where the element of motive, intent, identity, guilty knowledge, or a systematic scheme or plan is involved. In such instances, evidence of similar transactions may, in proper cases, be received to establish a constituent element of the crime charged, even though it may at the same time tend to prove the commission of other criminal offenses.

*State v. Salle*, 34 Wn.2d 183, 189, 208 P.2d 872 (1949).

Evidence of a prior conviction is admissible to prove intent even though not known to the arresting officer. The ordinance does not, therefore, deny a "known prostitute" equal protection of the law.

For the reasons stated, we hold that the ordinance is not constitutionally invalid, and Miss Jones' two convictions are affirmed.

FARRIS and SWANSON, JJ., concur.

Petition for rehearing denied December 22, 1970.

Review granted by Supreme Court February 23, 1971.