[Nos. 370-2; 637-2; 638-2;     Division Two.     April 25, 1972.]
639-2; 640-2; 641-2.

THE CITY OF TACOMA, *Respondent*, v. DAVID FRANCIS ROGER VANCE *et al.*, *Appellants.*

*Michael H. Rosen* and *Allan L. Overland* (of *Overland, Gelman & Sullivan*), for appellants.

*Robert R. Hamilton* and *William J. Barker,* for respondent.

ARMSTRONG, J.—Defendants appeal from jury convictions and sentences for violation of a Tacoma city ordinance which makes it a misdemeanor to willfully go upon designated public property with the intent to commit an unlawful act. In their appeal defendants challenge the constitutionality of the ordinance and contend that their acts did not violate the ordinance.

The primary question presented is whether the relevant portion of the ordinance is a reasonable exercise of the police power and is not violative of any mandate of the state and federal constitutions. We hold that it is a reasonable exercise of the police power and does not violate any constitutional mandate.

Submitted on appeal on an agreed statement of facts, the record shows that the defendants, members of a group known as "The Resistance," designated April 15, 1970 for a draft card turn-in demonstration in Wright Park. Although a permit was not required in order to use park property, one of the defendants, David Vance, informed the park board of the group's intentions, seeking the park board's sanction of the demonstration. The park board informed Vance that they would not sanction the demonstration. Vance then stated that they would have the meeting without permission of the park board and would violate the law.

In addition to advising the park board of their intentions to proceed with their demonstration, defendants made their intentions public by a press release. We have set forth in the margin the relevant portions of the press release, which called upon men registered with the draft to turn in their draft cards at the demonstration and those who had not yet registered to sign nonregistration statements.[1]

In accordance with their announced plans, on April 15, 1970 the defendants marched peaceably into the park. Three of the defendants performed a skit at the playground area of the park and then chained themselves together, making it necessary for the police to use bolt cutters to separate them. Defendants Vance, Andrews and Pettet then marched into another area of Wright Park and mounted a concrete podium. A group of people had gathered by this time for the purpose of turning in selective service draft cards and to sign complicity statements. It was stipulated in the agreed statement of facts that it was the purpose of all of the defendants to turn in selective service cards and to sign and solicit complicity statements.

The Tacoma police gave the crowd a stated period of time to disperse, and after they refused to do so, they arrested three of the defendants. Others, including the defendants Catherine Pettet, John Thomas Manley and Eileen Louise Fowler, mounted the podium and were also similarly warned and arrested, bringing the total to nine arrests, including the six defendants.

The defendants were charged with having violated that portion of City of Tacoma ordinance No. 8.44.065 which, in essence, makes it a misdemeanor for any person to go upon property owned, controlled or in the possession of the city, county park board or other political subdivision of the state

---

[1] "Press Release
"A Call to Resist Illegitimate Authority
"The Tacoma chapter of The Resistance has called for a draft card turn-in demonstration on Wednesday April 15th at 4:00 in the afternoon at Wrights Park 6th and Eye streets, Tacoma.
"The Resistance is an organization centered around open non-cooperation with the Selective Service System and urges people of all ages to join them in denouncing the fundamental immorality and increasing

788

with the intent to commit an unlawful act. The unlawful acts alleged to have been committed by the defendants were set forth in the amended complaint and included in the trial court's instruction No. 2, which reads as follows:

The City of Tacoma, through the City Attorney, has charged the defendants by an amended complaint as follows: That on or about the 15th day of April, 1970, each of the defendants did wilfully go upon the land of Wright's Park, owned by the City of Tacoma, and under the control and care of, and in the possession of, the Metropolitan Park District of Tacoma, with the intent to commit an unlawful act, to-wit: violations of the regulation of the Metropolitan Park Board governing the holding of assemblies in the park, violations of the ordinances of the City of Tacoma governing disorderly conduct, and violations of the registration and classification requirements of the Military Service Act of 1967, 50 USCA, App. §§ 451 et seq. (§462) and regulations based thereon, and did wilfully remain in or upon said land after having been warned by the owner and occupant thereof not to remain therein and not to trespass thereon contrary to the force and effect of the provisions of Chapter 8.44.065 of the Official Code of the City of Tacoma, and against the peace and dignity of the City of Tacoma and the State of Washington.

Chapter 8.44.065 of the official code of the City of Tacoma reads as follows:

Any person who shall go upon the premises or land owned by, under the control and care of, or in the possession of, the City of Tacoma, County of Pierce, Metropolitan Park District or other political subdivision of the State of Washington, with intent to vex the owner or occupant thereof or to commit any unlawful act, or shall wilfully go on or remain in or upon said premises or land after having been warned by the owner or occupant thereof not to enter therein or not to trespass thereon, shall be guilty of a misdemeanor.

The city, county, Metropolitan Park District or other

brutality of our nations course in Vietnam and other parts of the world. Men who have registered with the draft are asked to return their draft cards at this demonstration. People who have not yet registered are asked to sign non-registration statements and persons who are not draftable are asked to sign complicity statements."

political subdivision of the state of Washington shall be deemed to have given sufficient warning against trespassing within the meaning of this section, after having posted in a conspicuous maner [sic] upon or near the boundary of each side of any unenclosed lot or parcel of land, or near the entrance to any building, dwelling, house or premises, a sign or signs legibly printed or painted in the English language, substantially as follows: "WARNING—PUBLIC PROPERTY—NO TRESPASSING." (Ord. 16789 § 2; passed May 2, 1961).

The jury returned a verdict of guilty as to each of the defendants. They were sentenced to jail terms ranging from 40 to 90 days.

On appeal, defendants challenge the constitutionality of ordinance No. 8.44.065, claiming that its application to the acts and conduct of the defendants is violative of their rights under the first and fourth amendments to the United States Constitution, and of article 1, sections 3, 4 and 5 of our state constitution, and the fourteenth amendment to the United States Constitution. They further contend that the acts and conduct of the defendants do not fall within those prohibited by the ordinance by any reasonable and proper interpretation thereof. They also contend that the ordinance is unconstitutional because it is too vague. We do not agree with defendants' contentions.

▆▆▆▆ Municipalities derive their authority to enact ordinances in furtherance of the public safety, morals, health and welfare from article 11, section 11 of our state constitution, which provides:

Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws.

This is a direct delegation of the police power as ample within its limits as that possessed by the legislature itself. It requires no legislative sanction for its exercise so long as the subject matter is local, and the regulation reasonable and consistent with the general laws. An ordinance to be void for unreasonableness must be clearly and plainly unreasonable. The burden of establishing the invalidity of an

ordinance rests heavily upon the party challenging its constitutionality. Every presumption will be in favor of constitutionality, and, if a state of facts justifying the ordinance can reasonably be conceived to exist, such facts must be presumed to exist and the ordinance passed in conformity therewith. *Lenci v. Seattle,* 63 Wn.2d 664, 388 P.2d 926 (1964).

■ Further, to be consistent with due process, a penal statute or ordinance must contain ascertainable standards of guilt, so that men of reasonable understanding are not required to guess at the meaning of the enactment. The constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. It is fundamental that no ordinance may unreasonably or unnecessarily interfere with a person's freedom, whether it be to move about or stand still. The right to be let alone is inviolate; interference with that right is to be tolerated only if it is necessary to protect the rights and welfare of others. *Seattle v. Drew,* 70 Wn.2d 405, 423 P.2d 522 (1967); *Seattle v. Jones,* 3 Wn. App. 431, 475 P.2d 790 (1970).

In the instant case defendants' conviction rests on that portion of City of Tacoma ordinance No. 8.44.065 which, in essence, makes it a misdemeanor for any person to go upon land owned, controlled or possessed by the city, county, park district or other political subdivision of the state with the intent to commit any unlawful act. The defendants cite no case in which the courts have considered the validity of an ordinance framed in the precise terms employed in this case and we have found none. Analogies, however, are numerous.

In *Portland v. Goodwin,* 187 Ore. 409, 210 P.2d 577 (1949), the Oregon Supreme Court reviewed numerous analogous cases in an in-depth analysis of the general subject presented to us in the instant case. The decision was cited with approval in *Seattle v. Drew, supra.* The Oregon court was faced with the issue of whether a Portland ordinance

—making it unlawful to be on the streets without having and disclosing a lawful purpose—was constitutionally sound and a reasonable exercise of the police power. In upholding the validity of the ordinance the court pointed out that statutes which make the absence of lawful purpose or the presence of an unlawful purpose an element of a statutory offense are many, and the constitutionality of such enactments has been repeatedly upheld.

The rationale of *Portland v. Goodwin, supra,* is set forth in a supplemental opinion given when the petition for rehearing was denied:

> The overt act which violates the ordinance and thus authorizes arrest is the willful act of going upon the street during the prohibited hours and then and there manifesting by conduct an unlawful purpose.

■ Judged in the light of the foregoing rules we think that portion of the ordinance in the instant case making it a misdemeanor to go upon land of the city, county, park district or other political subdivision of the state with the intent to commit an unlawful act is clear and unambiguous in its drafting. The language conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The prohibition against going on public property with the intent to commit an unlawful act is designed to nip crime in the beginning. It further acts as a safeguard of public property and preservation of the public peace. Such a design is clearly reasonable and necessary to the peace, safety and welfare of the public, and accordingly constitutes a proper exercise of the police power.

It is clear from the record in the instant case that defendants entered upon Wright Park for the express purpose of surrendering their draft cards as a means of protesting United States involvement in Vietnam. Such purpose was clearly made known in a letter to the park board and· in a press release prior to the day of the demonstration.

Under 32 C.F.R. § 1617.1 (1971) men registered under the Selective Service Act are required to possess their registra-

tion certificate. Under 50 U.S.C.A. App. § 462(b)(6) (1968), it is provided that a fine of up to $10,000, or imprisonment of up to 5 years, or both, may be imposed upon any person who knowingly violates or evades any of the provisions of the Selective Service Act or rules and regulations promulgated pursuant thereto relating to the issuance, transfer or *possession* of a draft registration certificate. As applied to 32 C.F.R. § 1617.1 (1971) requiring registrants to maintain personal possession of their draft cards at all times, the prohibition in section 462(b)(6) against knowingly violating selective service regulations relating to the possession of draft cards has been held constitutional. *Zigmond v. Selective Serv. Local Bd. 16,* 396 F.2d 290 (1st Cir. 1968); Annot., 20 L. Ed. 2d 1576 (1969).

Obviously, the women defendants in the instant case are not required to register under the Selective Service Act of 1967. However, under 50 U.S.C.A. App. § 462(a) (1968), it becomes clear that any person who knowingly counsels, aids or abets another to refuse or evade any of the cited requirements, rules or regulations of the act, or any person who hinders, interferes or attempts to do so in any way shall be subject to a fine of up to $10,000 or imprisonment of up to 5 years, or both. Thus, under these provisions of the act, the women defendants also stood in violation of the Selective Service Act.

Applying the facts to the law and the express terms of the ordinance, we find no serious problem in determining that these defendants violated the ordinance which makes it a misdemeanor to go upon park property with the intent to commit an unlawful act. A representative of "The Resistance" went before the city council and requested the sanction of the council to conduct the draft card turn-in on park property. When denied the sanction, he stated that the meeting would be held without permission of the park board and they would violate the law. The press release distinctly stated their objective of meeting in the park to turn in their draft cards and sign complicity statements—clearly an unlawful act. They then went upon the park

property and commenced their demonstration. The police asked them to disperse and they refused to do so.

The overt act which violates the ordinance is the willful act of going upon the park property and manifesting by prior statements and present conduct an intention to commit an unlawful act.

Rarely would one find an intention so clearly expressed as in the instant case. In most cases the overt act which would authorize arrest for a violation of the ordinance in question would be going upon designated public property and then and there manifesting by conduct an intention to commit an unlawful act. The defendants in this case clearly defined their intentions to commit an unlawful act as a means of illustrating their defiance of the authority of the law.

Defendants challenge that portion of the ordinance making it a misdemeanor to go upon park property "with intent to vex the owner thereof" as being void for vagueness. That portion of the ordinance was not included within the specific charges in the amended complaint as is evidenced by reading of the trial court's instruction No. 2. Because it therefore did not serve as a basis of defendants' conviction we see no need or purpose in commenting upon it in this appeal.

Defendants also challenge the constitutionality of that portion of the ordinance resulting in a misdemeanor if one willfully goes on or remains on park property after having been warned by the owner not to enter or trespass thereon. Defendants contend that this provision makes a mockery of First Amendment rights and due process of law. A reading of the ordinance shows that this latter portion is worded in the disjunctive, "or", while the charges in the amended complaint and instruction to the jury refer to this section in the conjunctive, "and".

Since the court's instruction[2] merely added the requirement of proving that defendants willfully went upon the

---

[2]The only instruction included in the agreed statement of facts is the one quoted in this opinion.

property and remained there after having been warned not to enter or trespass, an additional burden of proof was thrust upon the state. The gravamen of the offense was the entry upon public property with the intent to commit an unlawful act. Had the word "or" instead of "and" been used we would have had to determine whether the defendants could have constitutionally been found guilty of the act of willfully entering the property and remaining there after having been warned not to enter or trespass.

Lastly, defendants assert that the charging portion of the amended complaint is insufficient in that it does not allege that the park property was posted against trespassing as set forth in the second paragraph of the ordinance. The record shows that defendants were well aware that the park board would not sanction their demonstration and that park property was not intended for such use or purpose. Defendants nevertheless proceeded with their plans, specifically stating that they would violate the law. Thus, the record clearly shows that defendants were put on notice and warned by the park board of the consequences of their planned event and cannot now claim lack of warning on the basis of a mere technicality in the complaint.

In summation, we recognize that the defendants were entitled to express their opposition to the war. It was their right to peacefully demonstrate to illustrate their viewpoint. Their actions, however, went beyond a peaceful demonstration. To attract attention to themselves and their cause they threatened to commit an unlawful act and encouraged the public to join them. When they carried out their plan they placed themselves in violation of the ordinance.

Judgment affirmed.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied June 1, 1972.

Review denied by Supreme Court July 21, 1972.