CITY OF CLEVELAND *v.* HOWARD.

(No. 87 CRB 17568—Decided
November 23, 1987.)

Cleveland Municipal Court.

*Patricia A. Blackmon,* chief prosecutor, and *William D. Ailer,* for plaintiff.

*Francis A. Gorczyca* and *Janet L. Miggins,* for defendant.

ADRINE, J. On September 2, 1987, defendant Kelly Howard was arrested and charged with a violation of Cleveland Codified Ordinances Section 619.11. This section prohibits loitering for the purpose of engaging in prostitution, solicitation or procurement.

The defendant has moved the court to dismiss the complaint. She argues that Section 619.11 is unconstitutional both on its face and as applied to her and others similarly situated.

The ordinance which the defendant now questions was the product of more than five years of debate and deliberation before Cleveland City Council. It was patterned after guidelines found in the American Law Institute's Model Penal Code, Proposed Official Draft, Sections 250.6 and 251.2. The ordinance states in part:

"No person shall remain or wander in a public place and repeatedly beckon to, or repeatedly attempt to engage passersby in conversation, or repeatedly stop or attempt to stop motor vehicles, or repeatedly interfere with the free passage of other persons for the purpose of engaging in soliciting or procuring sexual activity for hire."

Certain circumstances are set forth in the ordinance that a court might consider in an effort to determine the purpose of a defendant at the time of an arrest for its violation:

"The circumstances which may be considered in determining whether such purpose is manifested are: That such person is a known prostitute or panderer, repeatedly beckons to, stops or attempts to stop, or engages passersby in conversation or repeatedly stops or attempts to stop motor vehicle operators by hailing, waving arms or any other bodily gestures."

The defendant's challenges to the ordinance are founded upon what she perceives as violations of her rights under the First and Fourteenth Amendments to the United States

Constitution, as well as Sections 11 and 16, Article I of the Ohio Constitution. These challenges may be summarized as follows:

1. The ordinance impermissibly restricts the right to free speech.

2. The ordinance sweeps under its coverage both protected and unprotected speech and is, therefore, overbroad, and a denial of due process.

3. The ordinance is vague in its terms, and fails to inform the average citizen of what conduct is forbidden. It also does not contain standards clear enough to curb the unfettered discretion of the arresting officer. These infirmities also deny due process.

4. Individuals who have previously been convicted of prostitution or pandering are treated differently under the ordinance than other citizens and are therefore denied their right to equal protection.

The prosecution counters that the defendant's constitutional arguments are groundless. It has, therefore, moved the court to deny the defendant's motion.

As this court embarks upon an analysis of the merits of the positions of the respective parties, it is mindful of the parameters within which its review must be conducted. Those parameters were cogently set forth by the Court of Appeals for the Ninth Judicial District of this state in *Akron* v. *Parrish* (Mar. 10, 1982), Summit App. No. 10385, unreported. The court in that case was called upon to evaluate constitutional challenges similar to those *sub judice.* The Akron municipal ordinance involved therein employed language nearly identical to that used in the Cleveland ordinance presently before the bench.

The *Parrish* court began its evaluation by making the following observations, at 2-3:

"It is well settled that legislative enactments benefit from a strong presumption of constitutionality.

*Xenia* v. *Schmidt* (1920), 101 Ohio St. 437; *State, ex rel. Lourin* v. *Indus. Comm.* (1941), 138 Ohio St. 618; *American Cancer Society, Inc.* v. *Dayton* (1953), 160 Ohio St. 114; *State, ex rel. Dickman* v. *Defenbacher* (1955), 164 Ohio St. 142; *State, ex rel. Jackman* v. *Court of Common Pleas of Cuyahoga County* (1967), 9 Ohio St. 2d 159; *Ohio Public Interest Action Group* v. *Public Util. Comm.* (1975), 43 Ohio St. 2d 175; and *State* v. *Renalist, Inc.* (1978), 56 Ohio St. 2d 276. In construing legislative enactments, the courts are bound to avoid an unconstitutional construction if it is reasonably possible to do so. *Co-operative Legislative Committee* v. *Public Util. Comm.* (1964), 177 Ohio St. 101; *Schneider* v. *Laffoon* (1965), 4 Ohio St. 2d 89; *Bedford Hts.* v. *Tallarico* (1971), 25 Ohio St. 2d 211; *United Air Lines* v. *Porterfield* (1971), 28 Ohio St. 2d 97, app. dismd. (1972), 407 U.S. 917. Moreover, one who challenges the constitutionality of a legislative enactment bears the burden of proving its invalidity 'beyond a reasonable doubt.' *Miami County* v. *Dayton* (1915), 92 Ohio St. 215; *Davis* v. *State* (1927), 26 Ohio App. 340, aff'd (1928), 118 Ohio St. 25; *Espy* v. *Montgomery* (1971), 30 Ohio App. 2d 65; *State, ex rel. Dickman* v. *Defenbacher, supra*; and *State* v. *Renalist, Inc., supra.*"

These observations shall likewise guide this court throughout the present inquiry. See, also, *State* v. *McDonald* (1987), 31 Ohio St. 3d 47, 48, 31 OBR 155, 156, 509 N.E. 2d 57, 59.

The court's research on the questions now before it has uncovered numerous jurisdictions which have enacted statutes or ordinances whose language and import are substantially similar to that of the ordinance under scrutiny here. Many of these enactments have been in force for many years. Most have withstood constitutional challenges involving the selfsame issues which the defendant now

raises. See *Akron* v. *Massey* (1978), 56 Ohio Misc. 22, 10 O.O. 3d 216, 381 N.E. 2d 1362; *Akron* v. *Parrish, supra; State* v. *Evans* (1985), 73 N.C. App. 214, 326 S.E. 2d 303; *Seattle* v. *Jones* (1971), 79 Wash. 2d 626, 488 P. 2d 750; *People* v. *Smith* (1978), 44 N.Y. 2d 613, 407 N.Y. Supp. 2d 462, 378 N.E. 2d 1032; *In re D.* (1976), 27 Ore. App. 861, 557 P. 2d 687; *Lambert* v. *Atlanta* (1978), 242 Ga. 645, 250 S.E. 2d 456; *Short* v. *Birmingham* (Ala. Ct. Crim. App. 1981), 393 So. 2d 518; *Ford* v. *United States* (D.C. App. 1985), 498 A. 2d 1135; *South Bend* v. *Jones* (Ind. App. 1982), 434 N.E. 2d 104; *State* v. *Armstrong* (1968), 282 Minn. 39, 162 N.W. 2d 357. For those jurisdictions where similar ordinances have been found unconstitutional, see *Detroit* v. *Bowden* (1967), 6 Mich. App. 514, 149 N.W. 2d 771; *Profit* v. *Tulsa* (Okla. Ct. Crim. App. 1980), 617 P. 2d 250; *Brown* v. *Anchorage* (Alaska 1978), 584 P. 2d 35; *Johnson* v. *Carson* (M.D. Fla. 1983), 569 F. Supp. 974; *Christian* v. *Kansas City* (Mo. App. 1986), 710 S.W. 2d 11; *Milwaukee* v. *Wilson* (1980), 96 Wis. 2d 11, 291 N.W. 2d 452.

A comparative application of some of the above-cited authorities to the issues presented by the defendant's motion is instructive:

## I
### Free Speech

The gist of the defendant's free speech argument is that Section 619.11 authorizes the arrest of an individual, who happens to be known to the police as a prostitute or panderer, for such constitutionally protected activities as waving at or engaging in conversation with a passerby on a public street. A similar argument was rejected by the Court of Appeals of New York in *People* v. *Smith, supra*. In disposing of the issue, the court held, at 623, 407 N.Y. Supp. at 468, 378 N.E. 2d at 1037-1038:

"* * * Clearly, any criminal statute penalizes conduct and may, in the abstract, be said to impinge on speech or association in some fashion. But the protections afforded by the First Amendment are not absolute and the statute at issue here does not impermissibly sweep 'within its prohibitions what may not be punished under the First and Fourteenth Amendments' (*Grayned* v. *City of Rockford,* 408 U.S. 104, 115 * * *). That defendant may have employed language and the public streets to ply her trade does not imbue her conduct with the full panoply of First Amendment protections. On the contrary, the statute, by its terms, is limited to conduct 'for the purpose of prostitution * * *' — behavior which has never been a form of constitutionally protected free speech (see *Broadrick* v. *Oklahoma,* 413 U.S. 601, 615 * * *; *Colten* v. *Kentucky,* 407 U.S. 104, 111 * * *; *Shuttlesworth* v. *Birmingham,* 382 U.S. 87, 91 * * *; *Cox* v. *Louisiana,* 379 U.S. 559, 563 * * *.'' See, also, *Short* v. *Birmingham, supra,* at 522.

The *Smith* court's rationale is equally applicable to Section 619.11. Defendant's First Amendment attack upon the ordinance is not well-founded and therefore cannot be sustained.

## II
### Overbreadth

A statute or ordinance may be found to be impermissibly overbroad, even though its language is clear, precise and definite, if it sweeps constitutionally protected conduct within the perimeters of its prohibitions. *Grayned* v. *City of Rockford* (1972), 408 U.S. 104, 114; *Keyishian* v. *Bd. of Regents* (1967), 385 U.S. 589; *Shelton* v. *Tucker* (1960), 364 U.S. 479, 489; *Thornhill* v. *Alabama* (1940), 310 U.S. 88, 97; *Akron* v. *Parrish, supra.*

The defendant maintains that the ordinance under discussion here attempts to set forth a standard by which law enforcement officials might

recognize that conduct which it seeks to outlaw. In so doing, she argues, it sweeps constitutionally protected conduct, to wit, "attempting to engage a passerby in conversation," within its prohibitions. She concludes that the inclusion of such conduct within its scope renders the ordinance unconstitutionally overbroad.

It is well-settled that "* * * 'The rights of locomotion, freedom of movement, to go where one pleases, and to use the public streets in a way that does not interfere with the personal liberty of others' are implicit in the first and fourteenth amendments." *Johnson* v. *Carson, supra,* at 976, quoting *Bykofsky* v. *Middletown* (M.D. Pa. 1975), 401 F. Supp. 1242, 1254, affirmed without opinion (C.A. 3, 1976), 535 F. 2d 1245, certiorari denied (1976), 429 U.S. 964. Loitering, loafing and associating on street corners are all constitutionally protected activities. See *Papachristou* v. *City of Jacksonville* (1972), 405 U.S. 156; *Aladdin's Castle, Inc.* v. *Mesquite* (C.A. 5, 1982), 630 F. 2d 1029, 1041-1042.

In addition, all the examples cited in the ordinance as tending to manifest the purpose of prostitution (*e.g.,* the person is a known prostitute or panderer; the person repeatedly beckons to, stops or attempts to stop passersby; the person attempts to engage passersby in conversation; the person repeatedly stops or attempts to stop motor vehicle operators by hailing, waving of arms or any other bodily gesture) when taken individually are constitutionally protected.

If the ordinance provides the city authorization to punish for engaging in any of these acts, without more, it cannot withstand a constitutional attack. The ordinance, however, provides no such authorization.

Arrest and conviction under this law require that an illegal purpose, *i.e.,* solicitation for prostitution, be present in addition to mere loitering. An arrest can only be justified if the illegal purpose is manifested by overt, physical acts. *Akron* v. *Parrish, supra; Ford* v. *United States, supra,* at 1139. An arresting officer may not focus on any one or more of the enumerated circumstances set forth in the ordinance and ignore the general context in which they occur. Nor may the fact-finder at trial presume that a defendant had the intent to solicit for the purpose of prostitution merely because the city has proven that the defendant engaged in one or more of the enumerated acts. Rather, in each instance, the totality of the surrounding circumstances must be considered before the decision to arrest or to convict may properly be reached. *Ford* v. *United States, supra,* at 1138.

Thus, the ordinance explicitly limits its reach to loitering of a demonstrably harmful sort, that is, loitering for the purpose of committing a specific offense. *Akron* v. *Massey, supra,* at 25-26, 10 O.O. 3d at 218, 381 N.E. 2d at 1365; *Dayton* v. *Allen* (1971), 28 Ohio Misc. 181, 56 O.O. 2d 366, 271 N.E. 2d 574. It is not, therefore, impermissibly overbroad.

III
Vagueness

Due process imposes a fundamental, two-part test on any criminal statute claimed to be vague. First, it must be sufficiently definite to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden under its terms. Second, it must provide explicit standards for those who apply them so as to avoid resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. See *People* v. *Smith, supra,* at 618-619, 407 N.Y. Supp. 2d at 465, 378 N.E. 2d at 1034, citing *Grayned* v. *City of Rockford, supra,* at 108-109, and *United States* v. *Harris* (1954), 347

U.S. 612, 617. See, also, *Winters* v. *New York* (1948), 333 U.S. 507.

The defendant contends that the language of the ordinance before the court is so vaguely and imprecisely drawn that it causes her, as a person of ordinary intelligence who may fall within the ordinance's definition of a "known prostitute" (see Section 619.11[a][2]), to guess whether she is precluded from speaking or associating with people on the public streets. She argues, further, that this imprecision allows for subjective and selective application of the ordinance against her by law enforcement agents. It is her position that such imprecise draftsmanship has rendered the ordinance facially defective and therefore constitutionally unenforceable.

Upon review, the court finds the defendant's contentions without merit. The ordinance under review has a list of guidelines which utilizes language almost identical to that employed in similar ordinances of many jurisdictions which have been constitutionally challenged and upheld. Compare *Akron* v. *Massey, supra; Ford* v. *United States, supra; People* v. *Smith, supra; In re D., supra,* as examples. These guidelines relate to the intent of the offending party and delineate some of the overt conduct that an officer might consider in determining whether probable cause exists for an arrest under the ordinance. The fact that the defendant might have been known to the police as a prostitute was but one of the circumstances to be considered in deciding whether she should be arrested for violation of this law. *Seattle* v. *Jones* (1970), 3 Wash. App. 431, 438, 475 P. 2d 790, 795. It is apparent that the guidelines are not meant to be exclusive. Other conduct or circumstances, not specifically outlined in the ordinance but observed or perceived by an arresting officer, could legitimately form the basis of an arrest if such conduct or circumstances manifested the proscribed intent. *Seattle* v. *Jones* (1971), *supra,* at 630, 488 P. 2d at 752.

Loitering itself, although constitutionally protected, is an overt act. The ordinance sets forth clear and definite criteria whereby both the citizen and the arresting officer can judge whether the particular loitering involved is unlawful. *Akron* v. *Massey, supra,* at 25, 10 O.O. 3d at 218, 381 N.E. 2d at 1365; *Seattle* v. *Jones* (1971), *supra,* at 630, 488 P. 2d at 753. As previously noted, an arrest, and certainly a conviction, may be had under this law only if the act of loitering can be successfully coupled to an unlawful purpose, to wit: prostitution. Because of this required union of overt act and unlawful intent, the defendant is protected from punishment either for harmless conduct, or for harmful conduct the criminality of which had not been fairly communicated to her. *State* v. *Armstrong, supra,* at 43, 162 N.W. 2d at 360, citing *Omaechevarria* v. *Idaho* (1918), 246 U.S. 343; *Hygrade Provision Co.* v. *Sherman* (1925), 266 U.S. 497; *Screws* v. *United States* (1945), 325 U.S. 91. See, also, *Lambert* v. *Atlanta, supra; Short* v. *Birmingham, supra,* at 522.

The Constitution does not require that the ordinance reach impossible standards in an attempt to give notice to the citizenry of its prohibitions. All that is required is that the language convey sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. *Seattle* v. *Jones* (1970), *supra,* at 435, 475 P. 2d at 793, citing *United States* v. *Petrillo* (1947), 332 U.S. 1, 7-8; *Roth* v. *United States* (1957), 354 U.S. 476, 491. See, also, *State* v. *Evans, supra,* at 217, 326 S.E. 2d at 306.

It has been held that a criminal enactment, when it purports to proscribe vaguely described activity like loitering, must modify or circumscribe

the vaguely described activity by reference to specific non-vague conduct. *In re D., supra,* at 690. The listed guidelines in the instant enactment provide just such circumscription and ensure that unfettered discretion is not placed in the hands of the police. *Akron* v. *Massey, supra,* at 23, 10 O.O. 3d at 217, 381 N.E. 2d at 1364. The ordinance in no way requires that the ultimate determination of guilt or innocence be related to the arresting officer's knowledge of the defendant's status as a "known prostitute." *Seattle* v. *Jones* (1970), *supra,* at 439, 475 P. 2d at 795; *Short* v. *Birmingham, supra,* at 522. In fact, it can be argued that a suspect's immunity from arrest without probable cause is augmented rather than diminished by the definition of a "known prostitute" found in the ordinance. *Seattle* v. *Jones* (1970), *supra,* at 438-439, 475 P. 2d at 795.

The court finds that Cleveland Codified Ordinances Section 619.11 does not implicate a substantial amount of constitutionally protected conduct and is not impermissibly vague in all of its applications. It is held, therefore, that the defendant's right to due process has not been violated and her attack on the ordinance in that respect must fail.

## IV
### Equal Protection

The defendant maintains that the challenged ordinance violates the constitutional notion of equal protection under law. She argues that it unfairly discriminates between so-called "known prostitutes and panderers" and all other individuals who might use the public streets. She reasons that the ordinance allows a law enforcement officer to infer that innocent conduct engaged in by a "known prostitute or panderer" is in fact soliciting sexual activity for hire, while similar conduct by others not so designated results in no such inference. She concludes, therefore, that such disparate treatment results in those who are classed as "known prostitutes or panderers" being arrested, while others who engaged in the same conduct are allowed to go free.

A person may not be punished solely on the basis of his or her status. *Christian* v. *Kansas City, supra,* at 13, citing *Robinson* v. *California* (1962), 370 U.S. 660. It is equally true that an individual's status cannot constitutionally be made an element of an offense. *Profit* v. *Tulsa, supra,* at 251; *Detroit* v. *Bowden, supra.* Thus, if the ordinance under discussion here attempts to punish on the basis of the defendant's status alone or make her status an element of the offense which it seeks to prohibit, the defendant's due process and equal protection rights have in fact been violated.

Such, however, is not the case. As previously indicated, one's status as a "known prostitute or panderer" is merely a circumstance to be considered, among others, by an arresting officer in determining the existence of probable cause to arrest under the ordinance. The defendant's status, in and of itself, is not subject to sanction under the ordinance; nor is the defendant's status made an element of the offense. Additionally, for reasons which have been set forth at length elsewhere in this opinion, it is clear that the ordinance precludes the arrest of the defendant, or any "known prostitute or panderer," on the basis of loitering alone. *Akron* v. *Parrish, supra,* at 5; *Seattle* v. *Jones* (1970), *supra,* at 436, 475 P. 2d at 795.

The ordinance, therefore, does not create two classes of persons which are treated differently. The ordinance applies to all persons who violate it, regardless of their possible status as a "known prostitute or panderer." *Seattle* v. *Jones* (1971), *supra,* at 631, 488 P. 2d at 753.

## Conclusion

A thorough analysis of Cleveland Codified Ordinances Section 619.11, in light of an exhaustive review of the relevant authority on this subject, convinces this court that the ordinance is constitutionally sound, both facially and as applied to the defendant. This conclusion is buttressed by the knowledge that the United States Supreme Court has tacitly adopted essentially the same position.

In *State, ex rel. Juvenile Dept. of Multnomah Cty., v. D.* (1976), 27 Ore. App. 861, 557 P. 2d 687, the court rejected similar challenges to a Portland ordinance prohibiting loitering to solicit prostitution (Code of City of Portland Section 14.24.050). Significantly, the United States Supreme Court dismissed the appeal in the case for want of a substantial federal question (*D. v. Juvenile Dept. of Multnomah Cty.* [1977], 434 U.S. 914). The Supreme Court has plainly stated that a dismissal for want of a substantial federal question is a dismissal on the merits of a case. *Hicks* v. *Miranda* (1975), 422 U.S. 332, 344.

Having found no merit in the defendant's constitutional challenges to the ordinance under which she has been charged, it follows that her motion to dismiss must be denied. Judgment is hereby ordered accordingly.

*Motion to dismiss denied.*